■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD RUFF, Appellant.—Weiss, P. J. Appeal from a judgment of the County Court of Albany County (Keegan, J.), rendered April 23, 1990, upon a verdict convicting defendant of the crime of murder in the first degree.

On September 1, 1957, defendant's 11-year-old cousin (hereinafter the victim) was found dead in a kneeling position hanging from a tree in a vacant lot near his home in the Town of Colonie, Albany County. An autopsy revealed that the death was the result of strangulation and that the victim had been sodomized. Investigations at that time and several years later in 1965 were fruitless and the crime remained unsolved. In 1988 the victim's brother, who was employed as a police dispatcher, observed a wanted poster seeking defendant in connection with felony sexual assault against a 10-year-old girl in Rensselaer County. The victim's brother associated the Rensselaer County crime with the murder of his brother and alerted the State Police, who subsequently located defendant in Florida. The Rensselaer County officials were unwilling to pay the expenses associated with having two State Police investigators question defendant in Florida or to seek extradi-

tion of defendant with the result that the warrant was removed from the national crime computer system. On the other hand, the Albany County District Attorney was sufficiently interested with respect to the 1957 sodomy-murder of the' victim to finance the investigation.

On November 16, 1988, State Police Investigators Jack Brant and Joseph Lewis, accompanied by a Florida law enforcement officer, located defendant at his place of employment. The investigators identified themselves, and at their request, defendant voluntarily agreed to accompany them to the local police station for questioning. *Miranda* warnings were given and during questioning defendant confessed to several sex crimes, including the sexual assault in Rensselaer County. Thereafter, in the course of discussion about his background, defendant was questioned about the victim's death in 1957 and denied any involvement. In an effort to clear up that matter, defendant consented to submit to a polygraph examination which had to be scheduled on the following day. The investigators drove defendant to his home, stopping along the way to enable him to purchase cigarettes. Arrangements were made to meet the next day at a location away from defendant's home to avoid embarrassment.

On November 17, 1988, the investigators met defendant as arranged and, after stopping together for breakfast, proceeded to the offices of Mark Euiler, a licensed civilian polygraph examiner. Defendant was left alone in the office reception area while the investigators met with Euiler to brief him concerning the subject matter and purpose of the examination. Thereafter, defendant signed a waiver for the examination and met with Euiler, who carefully explained the waiver, the purpose and nature of the examination, the operation and function of the equipment, and the exact wording of the questions. Euiler thereafter administered the examination. The investigators were placed in another room from which they monitored the examination using audio equipment. After the examination had been completed and the result analyzed, Euiler indicated to defendant that he had a problem to which defendant responded "Yes, I know. The problem is I killed [the victim]." Defendant was initially reluctant to discuss details of the crime with the investigators but eventually wrote a note for Euiler confessing to the murder. During further police questioning, defendant elaborated upon the events leading to the victim's death and his involvement in the crime. A Florida warrant was issued for defendant's arrest charging him as a fugitive from New York. Defendant waived

extradition and was returned to this State. Following trial, defendant was convicted for the 1957 murder of the victim. This appeal followed.

Defendant contends that his inculpatory statements should have been suppressed because they were obtained in violation of his constitutional right to legal counsel. He has not challenged the voluntariness of his participation in the noncustodial questioning. Defendant does, however, contend that his right to counsel had indelibly attached with the filing of the sexual assault charge in Rensselaer County and that such right had been violated by the questioning which resulted in an illegally obtained confession relating to that charge. Defendant further argues that the illegal confession to the Rensselaer County crime was inextricably interwoven and exploited to produce the subsequent confession to the murder charge made the following day. We disagree with defendant's conclusions and find that denial of his suppression motion was proper.

Initially, we take note of the fact that defendant was not represented by legal counsel in the Rensselaer County matter at the times relevant herein (see, People v Robles, 72 NY2d 689, 698; People v Rogers, 48 NY2d 167, 172-173) and, accordingly, the pendency[1] of those charges did not result in the attachment of a nonwaivable right to counsel in the unrelated Albany County murder investigation (see, People v Bing, 76 NY2d 331, 338-341; People v Kazmarick, 52 NY2d 322, 328-329). Moreover, examination of the record reveals that the questioning occurred in two distinct and separate phases; the questioning on the murder was fairly separable from the unrelated sexual assault allegation, and the sexual assault charge was not critical to or interrelated with the murder investigation (see, People v Ermo, 47 NY2d 863, 865). We

1. County Court found that the State Police investigators had contacted the Rensselaer County District Attorney and were under a good-faith belief that the Rensselaer County warrant had been withdrawn, that the District Attorney did not intend to prosecute the matter and the charges were no longer actively pending. This finding has ample support in the record and we accept it for the purposes of this appeal (see, People v Prochilo, 41 NY2d 759, 761; People v Oden, 36 NY2d 382, 385; People v Jennings, 173 AD2d 733, lv denied 78 NY2d 968). The charge technically remained pending, although dormant, because the District Attorney's office had failed to formally move to dismiss it, even though a decision had been made not to prosecute the matter for lack of evidence. Accordingly, in the instant case, the police were not charged with knowledge of the pendency of the unrelated Rensselaer County investigation (see, People v Bertolo, 65 NY2d 111, 120-121) and acted reasonably.

disagree with defendant's argument that there was the kind of exploitation or a known legal representation which the Court of Appeals held to be the critical factors requiring suppression of the statement in *People v Ermo (supra) (see also, People v Rogers, supra,* at 172). Here defendant was a middle-aged adult and himself a former police officer. The setting for all of the questioning was noncustodial *(see, People v Bing, supra,* at 340). The statements sought to be suppressed were separated by one full day from the earlier questioning on the Rensselaer County matter. Defendant's initial confession occurred outside police presence, and while it generally followed the controlled questions of the voluntary polygraph examination, the confession itself was not the product of questioning. We therefore hold that County Court properly admitted defendant's statements.[2]

Defendant next contends that County Court erred in failing to strike certain expert testimony, arguing that the pathologist called by the prosecution based a portion of his opinion upon facts outside the record. Admittedly, an expert cannot reach a conclusion by assuming material facts not supported by evidence *(People v Jones,* 73 NY2d 427, 430; *Hugelmaier v Town of Sweden,* 144 AD2d 934, 935). The challenged fact here is whether the victim was hanged by full suspension prior to the discovery of the crime, by which time his knees may have touched the ground. The fact that the victim had been subjected to a full suspension hanging finds substantial support in the medical records and defendant's statement, both of which were articulated during the questioning of the doctor. Conflicting evidence, opinions and theories merely go to the weight to be given to the opinion by the trier of facts.

Defendant further contends that County Court erroneously refused to permit him to introduce a 25-year-old medical opinion regarding the cause of the victim's death. The 1965 letter report of Milton Halpern to the State Police made after reviewing elements of the police file was properly excluded because it failed to qualify as a business record (CPLR 4518 [a]). Halpern, the then-New York City Medical Examiner and now deceased, was under no business duty to review the criminal file and render an opinion eight years after the

---

2. Despite the prosecutor's willingness to proceed without reference to the questioning of the first day, defendant consented to its introduction. To the extent that defendant made inculpatory statements concerning the pending, but dormant Rensselaer County charge, the Rensselaer County Court is fully capable of protecting defendant's rights in relation thereto *(see, People v Bing, supra,* at 349).

crime; accordingly, the underlying business records exception which would render the report admissible must fail *(Matter of Leon RR,* 48 NY2d 117, 123). Nor do we find that the letter meets the interests of justice basis articulated in *Chambers v Mississippi* (410 US 284). The material reviewed by Halpern and the People's pathologist remained available for analysis, interpretation and opinion, and use by any pathologist retained by defendant.

Defendant's remaining allegations of error are either without merit or were not preserved for review. Defendant's characterization of the prosecutor's conduct as improper is unsupported in the record. An analysis of the record reveals that defendant received a fair trial. Accordingly, the conviction must be affirmed.

Mikoll, Crew III and Mahoney, JJ., concur; Yesawich Jr., J., not taking part. Ordered that the judgment is affirmed.