*727 OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be reversed, defendant’s motion to suppress granted and the indictment dismissed.
On March 8, 1989, at about 2:30 a.m., defendant and a female companion were seated in a parked Oldsmobile on a deserted street known for criminal activity. Two police officers, patrolling in a marked car, drove up behind them to investigate. As the officers approached, with the patrol car’s red turret lights and spotlight on, defendant started the engine of the Oldsmobile and slowly pulled away. At this point, one of the officers, using the police car’s loudspeaker, ordered the car to pull over. Defendant did so.
The officers approached the Oldsmobile and asked defendant to produce his license, registration or insurance card and as the officers waited for him to do so, they noticed that a towel was draped over the steering wheel column. They called in the car’s license plate number and were advised that the car was stolen. The officers then placed defendant under arrest. A body search revealed three vials of crack cocaine in his pocket, and when the towel was removed from the steering column the officers discovered that the column had been broken and rewired.
Defendant moved the trial court to suppress the crack and the police pictures subsequently taken of the stolen car as the fruits of an illegal stop and seizure. The motion was denied.
 We preliminarily note that, despite the fact that defendant was seated in a stolen car, the police stopped him personally and he consequently has standing to challenge the legality of that stop (see, People v Millan, 69 NY2d 514, 520-521). Turning to the merits, we hold that when the police, using red turret lights, a spotlight and a loudspeaker, ordered defendant to pull the car over, defendant was effectively "seized” (see, People v Sobotker, 43 NY2d 559, 563; People v Ingle, 36 NY2d 413, 418; see also, People v Cantor, 36 NY2d 106, 111). Consequently, the stop was proper only if the officers had a reasonable suspicion of criminal activity (see, People v Sobotker, 43 NY2d, at 563, supra; People v De Bour, 40 NY2d 210, 223).
Under the circumstances existing, the police officers here could not have entertained a reasonable suspicion that a crime had been or was about to be committed. They knew *728 only that defendant and another person were sitting in a car parked on a desolate street, a fact which provided them with no information regarding criminal activity. Moreover, defendant’s action in moving the car slowly away as the police approached could not serve to create a reasonable suspicion of criminality given defendant’s right "to be let alone” and to refuse to respond to police inquiry (see, People v Howard, 50 NY2d 583, 590-591, cert denied 449 US 1023 [quoting Olmstead v United States, 277 US 438, 478]). The police could have followed the car, to keep it under observation while they checked on its plates to determine if it was stolen (see, People v Sobotker, 43 NY2d, at 564, supra), but they had no legal basis to stop the car when they did.
Nothing said here should be construed as holding that the police may not make a common-law inquiry of those in a vehicle based upon a founded suspicion and, as suggested by the dissent, the officers here had grounds to do so. The police may not forcibly detain civilians in order to question them, however, without a reasonable suspicion of criminal activity and once defendant indicated, by pulling away from the curb, that he did not wish to speak with the officers, they should not have forced him to stop without legal grounds to do so (see, People v Martinez, 80 NY2d 444 [decided today]). Any other rule would permit police seizures solely if circumstances existed presenting a potential for danger.
Accordingly, the evidence should have been suppressed (see, Wong Sun v United States, 371 US 471, 485; People v Ingle, 36 NY2d, at 418-419, supra).