[605 NYS2d 120]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DARYL
L. ADAMS, Appellant.

Third Department, December 2, 1993

## APPEARANCES OF COUNSEL

*Broda & Burnett,* Troy *(Douglas J. Broda* of counsel), for appellant.

*Sol Greenberg, District Attorney* of Albany County *(John E. Maney* of counsel), for respondent.

OPINION OF THE COURT

CASEY, J.

Police Officer Darrell Nicholson was on routine patrol one evening in a marked police car when he observed what he believed to be a black 1988 Volkswagen Jetta automobile parked in the area of Third Avenue and Broad Street in the City of Albany. An individual was standing by the Jetta, leaning into the driver's window talking with defendant, the driver and sole occupant of the vehicle. Because Nicholson had been advised at roll call that evening to be on the lookout for a stolen black 1988 Jetta, he pulled up behind the vehicle. The pedestrian immediately left and the Jetta pulled away. Viewing this conduct as suspicious, Nicholson pursued the Jetta, pulled it over by activating his roof light, walked up to the car and asked defendant for his license and registration. Defendant was able to produce neither, but he did give his name and state that he was coming from the City of Rensselaer in Rensselaer County. Nicholson then observed that the number on the vehicle's registration sticker did not correspond to the license plates on the vehicle. He returned to his police car to call in the plate number, at which time defendant left his vehicle and, after a brief struggle with Nicholson, successfully fled the area.

Nicholson subsequently identified defendant from a photograph on file with the Rensselaer Police Department and defendant was arrested at a friend's house. While being booked, defendant was observed throwing two stolen credit cards under a police officer's desk. After administration of *Miranda* warnings, defendant was questioned and readily acknowledged his knowing possession of the stolen Jetta and the credit cards. Defendant was subsequently indicted for grand larceny in the third and fourth degrees and criminal possession of stolen property in the third and fourth degrees. He was convicted after a jury trial of criminal possession of stolen property in the third and fourth degrees. Defendant now appeals his judgment of conviction and, by permission of a Justice of this Court, the denial of his motion for postconviction relief pursuant to CPL 440.10.

■ Defendant first contends that the evidence is insufficient to support the verdict convicting him of the crime of criminal

possession of stolen property in the third degree. There is sufficient evidence to show that defendant was in possession of a vehicle owned by Michele Conway, that the vehicle had been stolen and that the value of the vehicle exceeded $3,000, thereby establishing all of the elements required by Penal Law § 165.50. Defendant contends, however, that the People failed to submit any evidence that the car's vehicle identification number was the number alleged in the indictment. We conclude that the vehicle identification number was not an essential fact to establish defendant's guilt of the crimes charged in the indictment. The People are not required to prove all facts alleged in the indictment, provided that the remaining facts alleged and proven are sufficient to sustain a conviction *(see, People v Rooney,* 57 NY2d 822, 823).

■ Next, we reject defendant's contention that the police lacked reasonable suspicion to stop the vehicle he was driving. Assuming that Nicholson's observation of a vehicle that matched the year, make, model and color of a vehicle reported as stolen was insufficient to provide the reasonable suspicion necessary for stopping the vehicle *(but see, People v Singleton,* 41 NY2d 402), it is nevertheless our view that the stop was justified. The decision in *People v De Bour* (40 NY2d 210) established a four-tiered method for evaluating encounters initiated by police officers in their criminal law enforcement capacity. Inasmuch as defendant's vehicle matched the year, make, model and color of a vehicle which had been reported as stolen, Nicholson undoubtedly was justified in initiating the minimal level of intrusion *(see, supra,* at 223) by approaching the stopped vehicle for the purpose of requesting information *(see, People v Harrison,* 57 NY2d 470, 475 [extremely dirty condition of rental car provided necessary articulable basis]; *People v Whiten,* 156 AD2d 606, *lv denied* 75 NY2d 926 [missing trunk lock]). The distinction between the request-for-information encounter and the more intrusive common-law inquiry is often a subtle one *(see, People v Hollman,* 79 NY2d 181, 192), but *People v May* (81 NY2d 725) establishes that the information possessed by Nicholson herein provided the requisite reasonable suspicion of criminal activity afoot to justify a common-law inquiry *(see, People v De Bour, supra,* at 223). The police officers in *People v May (supra)* knew only that defendant and another person were sitting in a car parked on a desolate street at 2:00 A.M. In holding that the officers were not justified in stopping the vehicle when it slowly moved away as they approached, the Court explained, "Nothing said

here should be construed as holding that the police may not make a *common-law inquiry* of those in a vehicle based upon a founded suspicion and * * * *the officers here had grounds to do so"* *(supra,* at 728 [emphasis supplied]). Clearly, Nicholson, who had been advised to be on the lookout for a stolen vehicle which matched the year, make, model and color of defendant's vehicle, had more of a basis for the reasonable suspicion necessary to initiate a common-law inquiry than did the officers in *People v May (supra),* and he was therefore justified in approaching defendant's vehicle to make a common-law inquiry, even though the information prompting the inquiry was hearsay *(see, People v Landy,* 59 NY2d 369, 376).

When the police lack a "reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor", which is necessary to justify a forcible stop *(People v De Bour, supra,* at 223), they cannot stop an individual who exercises his or her "right 'to be let alone' and to refuse to respond to policy inquiry" by slowly driving away as the police approach his or her vehicle to make a common-law inquiry *(People v May, supra,* at 728). Had the police in *People v May (supra)* been able to make the common-law inquiry justified by their observation of two occupants in a vehicle parked on a desolate street at 2:00 A.M., the occupants' refusal to respond to an inquiry concerning their conduct could not have created any greater suspicion than already existed, because they had a right not to respond which is derived from their right to remain silent *(see, People v Howard,* 50 NY2d 583, 590, *cert denied* 449 US 1023). In the case at bar, however, defendant had no right to refuse to respond to the type of common-law inquiry justified by Nicholson's knowledge and observations.

Having observed a stopped vehicle that matched the description of a vehicle reported as stolen, Nicholson had a proper basis to inquire not about the conduct of the vehicle's occupants, but about the ownership of the vehicle. As the driver of the vehicle, defendant would have had an affirmative obligation to comply with Nicholson's lawful request for "any information necessary for the identification of such vehicle and its owner" (Vehicle and Traffic Law § 401 [4]; *see, People v Phillips,* 159 AD2d 326). Although defendant's right to remain silent would have applied to an inquiry about where he was going, where he had been or what he was doing, he nevertheless would have been obligated to provide the information required by the Vehicle and Traffic Law *(see, People v Glover,*

163 AD2d 174, 175, *lv denied* 76 NY2d 986; *see also, People v Class,* 63 NY2d 491, 497, n 4, *revd on other grounds* 475 US 106), and Nicholson's knowledge and observations as he approached defendant's vehicle justified a request for such information.

Had defendant actually refused to respond to such a request, Nicholson would have been justified in detaining defendant for the limited time necessary to make a radio check to ascertain whether the vehicle had been stolen *(see, Wade v Fisk,* 176 AD2d 1087, 1088, *appeal dismissed and lv denied* 79 NY2d 896). We see no reason to reach a contrary result merely because defendant sought to avoid Nicholson's lawful inquiry by driving away when he saw Nicholson approach. That defendant could not have known the nature of the officer's inquiry when he drove away is irrelevant. The question is whether Nicholson possessed the quantum of knowledge sufficient to give rise to the type of reasonable suspicion necessary to effect a stop *(see, People v Martinez,* 80 NY2d 444, 448). In these circumstances, Nicholson, who had sufficient knowledge to request information necessary for the identification of the vehicle and its owner, could reasonably have concluded that defendant fled to avoid compliance with the statutory requirement that he provide that information upon the lawful request of a police officer. This conclusion, coupled with Nicholson's observation that defendant's vehicle matched the description of a vehicle that was reported as stolen, justified Nicholson's stop of the vehicle for the limited purpose of investigating to ascertain whether the vehicle was stolen.

Our holding on this issue neither fashions a rule applicable whenever a vehicle is reported stolen nor creates a new *De Bour* category. "[A]ny inquiry into the propriety of police conduct must weigh the interference it entails against the precipitating and attending conditions" *(People v De Bour, supra,* at 223). We have considered all of the precipitating and attending conditions of *this case* and applied the *De Bour* balancing test to determine whether *the conduct actually undertaken by the police herein* was proper. We have concluded only that *in this case* the degree of intrusion was reasonable based upon all of the relevant facts and circumstances, including defendant's conduct in immediately driving off when Nicholson approached to ask for information about the vehicle that defendant was statutorily required to provide. All of the relevant facts and circumstances served to elevate Nicholson's reasonable suspicion from the level necessary for

a common-law inquiry to the level necessary for a stop pursuant to *People v De Bour (supra)*.

■■ Defendant's remaining contentions are meritless. The case of *People v Bartolomeo* (53 NY2d 225) was overruled by *People v Bing* (76 NY2d 331), which applies retroactively *(see, People v Vail,* 182 AD2d 331, 333, *lv denied* 81 NY2d 977), and there is no evidence that the questioning of defendant by the Albany police was interwoven with the then-pending charges in Rensselaer, on which defendant was represented by counsel *(see, People v Ruff,* 185 AD2d 454, 456-457, *affd* 81 NY2d 330). The evidence establishes that Nicholson had an ample independent source for his in-court identification of defendant *(see, People v Riley,* 70 NY2d 523, 531), and any error in Nicholson's testimony about the prior photographic identification was harmless *(see, People v Hope,* 190 AD2d 958, *lv denied* 81 NY2d 972). There is no support in the record for defendant's claim that the People failed to turn over exculpatory material.

The judgment and order should therefore be affirmed.

MERCURE, J. (dissenting in part and concurring in part). Because I am of the view that Police Officer Darrell Nicholson's stop of defendant's vehicle was not supported by the requisite reasonable suspicion that defendant had committed a crime *(see, People v Holmes,* 81 NY2d 1056, 1057-1058; *People v May,* 81 NY2d 725, 727), I necessarily conclude that the seizure was illegal and all evidence derived therefrom must be suppressed. To me, the majority's contrary position is tantamount to a determination that whenever a vehicle is reported stolen, the police may properly suspect that the operators of all vehicles of like year, make, model and color, observed within a period of days thereafter (and, vehicles being mobile by nature, within hundreds of miles thereof), are engaged in criminal activity. My research has uncovered no support for so extreme a proposition. Courts have permitted the seizure of a vehicle which is identified as stolen by its plate number or other clearly distinguishing characteristic *(see, People v Landy,* 59 NY2d 369; *People v Mitchell,* 143 AD2d 947, *lv denied* 73 NY2d 924; *People v Catalano,* 134 Misc 2d 621, 626-627) or which fits the general description of the stolen vehicle and is encountered in close temporal and geographic proximity to the theft *(see, People v Clark,* 172 AD2d 679; *People v Mitchell, supra)*. Here, though, there is no evidence that the vehicle had just been stolen from a nearby location (in fact, the theft occurred at least 38 hours earlier) or that Nicholson

knew the license plate number or was aware of any other distinctive feature that could have facilitated identification of the stolen vehicle.

I acknowledge that the similarity of the vehicle, in year, make, model and color, to one that had been reported stolen justified Nicholson's initial approach, as he testified, to take down and call in the license plate number *(see, People v May, supra,* at 728). Arguably, as contended by the majority, Nicholson could have gone so far as to make a common-law inquiry of defendant *(see, supra).* However, as in *People v May (supra),* when defendant exercised his right to be left alone by driving away, Nicholson was not permitted to pursue and seize him *(see, People v Martinez,* 80 NY2d 444, 448; *People v Howard,* 50 NY2d 583, *cert denied* 449 US 1023). To the contrary, his sole permissible recourse was to follow defendant and keep the vehicle under observation while he made a radio check of its plates to see if it was stolen *(see, People v May, supra; People v Sobotker,* 43 NY2d 559, 564; *cf., People v Lewis,* 195 AD2d 523). Had Nicholson taken that course, the radio report would have shown that the plates did not match the vehicle, thereby authorizing defendant's seizure.

Although acknowledging that the police in *People v May (supra)* had reasonable suspicion that criminal activity was afoot, that the right to make a common-law inquiry thereby arose, and that the driver was nonetheless free to avoid the police encounter by merely driving away, the majority finds that no such freedom existed here because Nicholson's reasonable suspicion was somehow superior to that in *May* and a more intrusive form of common-law inquiry (indistinguishable from a seizure) was justified because of the action Nicholson *could have* taken *if* defendant had refused to answer certain questions, *if* Nicholson had asked them, *if* defendant had not first driven away. Simply stated, because the hierarchy of permissible police action enunciated in *People v De Bour* (40 NY2d 210, 222-223) does not justify the police action taken here, the majority has created a new category of precipitating and attendant factors, resting somewhere between "a founded suspicion that criminal activity is afoot" *(supra,* at 223) and "a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor" *(supra,* at 223), but permitting the same level of intrusion as the latter. I find no support for this new category in *De Bour* or its progeny.

Having determined that the seizure of the vehicle was illegal, it remains to identify the evidence derived therefrom *(see, Wong Sun v United States,* 371 US 471; *People v Clark,* 133 AD2d 955). It is my view that the identification of defendant as the possessor of the vehicle on July 8, 1989, his arrest and the search of his premises on July 16, 1989 and his subsequent oral admission that he stole the vehicle all derived directly from the illegal seizure, and evidence thus obtained must be suppressed *(see, People v Clark, supra,* at 956). Accordingly, defendant's conviction for criminal possession of stolen property in the third degree should be reversed and the second count of the indictment dismissed.

I reach a different conclusion, however, with regard to the evidence of defendant's possession of the stolen credit cards. In my view, defendant's act of throwing the credit cards under the police officer's desk was "not in direct and immediate response to the illegal detention" *(People v Boodle,* 47 NY2d 398, 402, *cert denied* 444 US 969; *see,* Katz and Shapiro, New York Suppression Manual § 3.01 [4]) but rather "an independent act involving a calculated risk" *(People v Boodle, supra,* at 404), and the evidence derived therefrom is not tainted by the prior illegality *(see, supra).* Accordingly, there is no basis for suppression of the credit cards, testimony as to defendant's act of throwing them under the desk or his subsequent admission concerning them.

Accordingly, I would modify the judgment and order by reversing so much thereof as convicted defendant of the crime of criminal possession of stolen property in the third degree, dismiss the second count of the indictment and otherwise affirm.

WEISS, P. J., CARDONA and MAHONEY, JJ., concur with CASEY, J.; MERCURE, J., dissents in part and concurs in part in a separate opinion.

Ordered that the judgment and order are affirmed.