OPINION OF THE COURT
James A. Yates, J.
On January 12, 1996 two police officers assigned to a “quality of life” detail seized and then arrested Lyman Bothwell when they saw him holding an open Heineken bottle in a paper bag in front of a luncheonette. Incident to that seizure, they recovered 35 bags of crack cocaine. Mr. Bothwell has moved to suppress the evidence. He argues that a mere sighting of an open beer bottle in his hand, without more, does not justify a forcible seizure and, as a consequence, the drugs were illegally obtained by the police.
The arrest in this case was for an alleged violation of New York City’s “Open Container Law”, Administrative Code of the City of New York § 10-125 (b), which prohibits possession of “an open container containing an alcoholic beverage in any public place” with intent to drink the same. In People v Lee (58 NY2d 491 [1983]), a Monticello ordinance criminalizing possession of an open container containing an alcoholic beverage was found to be constitutionally infirm for overbreadth. Although the Court of Appeals has not yet reached the question, it has been argued that New York City’s Open Container Law can be distinguished from the defective Monticello ordinance because the New York City law prohibits possession of an open container of alcohol only when coupled with the intent to consume it. At the same time, the New York City provision presumes that a person possessing an open container of alcohol does so with an intent to drink in public.
 Mr. Bothwell’s seizure cannot be justified under New York’s “stop and frisk” provision because CPL 140.50 prohibits seizures upon less than probable cause when the person seized is only suspected of committing a petty offense. Additionally, the police were not authorized to arrest Mr. Bothwell for a violation of the Open Container Law because they did not see him drinking from the bottle and they never ascertained if the bottle contained beer or was empty. A plain reading of the Criminal Procedure Law, the Administrative Code and the Court of Appeals decision in Lee (supra) makes it abundantly clear that merely holding an empty beer bottle on a public street is not proper cause for arrest.
*594 FINDINGS OF FACT
On January 12, 1996, Police Officer Thomas Tergesen of the 30th Precinct, a 2[1]/2-year veteran of the force, was on uniformed patrol in a marked police car. His assignment as part of the Northern Manhattan Initiative was to focus on quality of life issues, such as gambling and public urination or drinking. At a little after 10:00 p.m. that evening, he observed the defendant on the northwest corner of 140th Street and Amsterdam Avenue, apparently in conversation with the three or four people in close semicircle around him.
From the front passenger’s seat of the patrol car Officer Tergesen saw the defendant, who was about 15 to 20 feet away, holding a bottle, three quarters of which was concealed by a brown paper bag. The officer observed that the bottle was green and saw that there was a white label on the neck of the bottle but could not read the label. At no point did the officer observe the defendant drink from the bottle.[1]
As the police car stopped, the defendant put the bottle down and entered a luncheonette a few feet away. The people who had been standing with the defendant disbursed. The officer walked towards the store that the defendant had entered and glancing at the bottle he was able to read the Heineken label on the neck, but did not determine whether the bottle was empty or not.
The officer and his partner entered the luncheonette and asked the defendant to step outside. The defendant did not reply and stood still. The officer again asked the defendant to step outside and the defendant remained mute and motionless. At that point, Officer Tergesen grabbed one of the defendant’s arms and his partner grabbed the other and they pulled the defendant out of the luncheonette. As the officers took the defendant outside, Officer Tergesen noticed small red baggies of *595 cocaine falling from one of the defendant’s hands. The officers placed the defendant against a wall, handcuffed him and recovered additional baggies of cocaine from the defendant’s hand, both loose and in a brown paper bag he was clutching. A total of 35 red baggies were recovered. During the course of his arrest and booking the defendant made statements to the officers.
CONCLUSIONS OF LAW
When the police entered the store and directed Mr. Bothwell to come with them, he refused. At that point the two officers physically seized the defendant and pulled him from the store. It was only after they grabbed him that they noticed, as a direct consequence of the seizure, the contraband in question.
This encounter went well beyond the less invasive intrusion permitted by either level I or level II suspicion under People v De Bour (40 NY2d 210 [1976]). (People v Martinez, 80 NY2d 444, 447 [1992]; People v May, 81 NY2d 725, 727 [1992]; People v Boodle, 47 NY2d 398, cert denied 444 US 969 [1979].) In apparent recognition of that fact, the People do not argue that the seizure was merely a common-law inquiry. Instead, they concede that a forcible seizure occurred, but assert that the officer’s conduct was authorized as appropriate response under either level III or level IV.
However, the police may not use the “stop and frisk” provisions of level III merely upon suspicion that the defendant has committed a violation defined in the Administrative Code. De Bour (supra) recognized that the power for a police officer to temporarily detain and question a suspect on less than probable cause is premised upon, and governed by, CPL 140.50. (People v De Bour, supra, at 223.) That provision specifically confines the power to temporarily detain and question a suspect, on less than probable cause, to situations where the police officer has reasonable suspicion to believe the defendant “is committing, has committed or is about to commit either (a) a felony or (b) a misdemeanor defined in the penal law”. (CPL 140.50 [1].) It is a carefully drafted provision with thought to the significant implications of permitting a physical seizure of a person in cases where the police do not have probable cause to believe a crime was committed. (See, Terry v Ohio, 392 US 1, 27 [1968].) In such cases, an important balance was struck by the Legislature; the power to detain on mere suspicion of criminal activity is allowed only in cases of importance, i.e., crimes defined by the Legislature.
*596 In the present case, the police had no reason to suspect the defendant of committing either a felony or a misdemeanor defined in the Penal Law. The defendant was suspected of drinking alcohol from an open container, a petty offense, or violation, punishable by a fine of $25 or 5 days’ imprisonment, under the Administrative Code. As such, the police were not authorized to temporarily seize the defendant absent probable cause to believe that he committed an offense in their presence.[2]
Since the police were not authorized to forcibly seize or detain the defendant pursuant to level III suspicion, the only remaining question for this court is whether the police had probable cause to justify an arrest of the defendant, under level IV, at the time they dragged him from the store.
Ostensibly, CPL 140.10 (1) (a) authorizes an arrest by a police officer for “[a]ny offense when he has reasonable cause to believe that such person has committed such offense in his presence”. It could be argued, therefore, that a police officer has the authority to arrest a person who possesses “with intent to drink or consume, an open container containing an alcoholic beverage in any public place”—an act prohibited by Administrative Code § 10-125 (b).
As previously indicated, the Court of Appeals voided, as unconstitutional, a Monticello ordinance which prohibited possession of an open container of alcohol in People v Lee (58 NY2d 491, supra). The Court reasoned that, “The proscription strikes down what may well be innocuous behavior and undertakes to make criminal conduct which would not carry the slightest taint of corruption or impropriety and which a person of ordinary intelligence would not perceive as criminal (cf. Papachristou v City of Jacksonville, 405 US 156.)” (58 NY2d, at 496.)
At the same time, the Court specifically left open the question of whether a similar statute, such as the one before this court, might be salvaged by adding a requirement that possession be with the intent to consume. Since the statute before the Court in Lee (supra) did not require an intent to consume, the Court specifically declined to address the issue.
*597 As such, a number of localities have enacted “open container” laws which incorporate the added element of intent to consume—in effect converting open container laws to “public drinking” laws. (See, e.g., People v Elhage, 147 AD2d 911 [4th Dept 1989] [City of Fulton ordinance]; People v Villatoro, 158 Misc 2d 557 [Westbury Village Just Ct 1993] [contrasting Town of North Hempstead Code, which required proof of intent, with Village of Westbury Ordinance which, fatally, failed to contain an intent provision].)
To date, the Court of Appeals has not resolved the question left open in Lee (supra; see, People v Furlong, 70 NY2d 756 [1987] [dismissing as moot a challenge to a similarly worded Long Island park regulation]). The Appellate Division, Fourth Department, in Elhage (supra) was of the opinion that an intent requirement avoids the problem raised in Lee and renders a public drinking statute constitutional. However, the Administrative Code provision here is closer to the provision found wanting by the Court of Appeals than that upheld by the Elhage Court: although it prohibits possession with an intent to consume, the Code purports to create a rebuttable presumption that any person in “[possession of an open container containing an alcoholic beverage * * * did intend to consume the contents thereof in violation of this section.” (Administrative Code § 10-125 [c].)
The net effect of the presumption is to permit arrest of any person in simple possession of an open container containing an alcoholic beverage; no further evidence that the arrestee had an intent to publicly consume the beverage would be required.[3] This would seem to sanction arrests for the very behavior which the Court of Appeals declared “innocuous” and which was not prosecutable because “a person of ordinary intelligence would not perceive as criminal” that which led to his arrest. (People v Lee, 58 NY2d, supra, at 496.) When the Court of Appeals struck down the Monticello statute, it cited as authority Papichristou v City of Jacksonville (405 US 156 [1972], supra). In that case, a vagrancy statute was voided “because it encourages arbitrary and erratic arrests and convictions” (405 US, at 162), and places “unfettered discretion * * * in the hands of the * * * police” (supra, at 168), thereby furnishing “a conve *598 nient tool for ‘harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure.’ ” (Supra, at 170, quoting Thornhill v Alabama, 310 US 88, 97-98 [1940].) When the Court of Appeals does reach the issue of the constitutionality of Administrative Code § 10-125, it will, perforce, face once again the question of whether a statute which permits arrests of any person in simple possession of an alcoholic beverage in public invites “arbitrary and erratic arrests.”
The arrest in this case is necessarily premised upon an alleged violation of a local ordinance because the Penal Law contains no provision comparable to New York City’s Open Container Law. Prior to January 1, 1976 public intoxication was banned by Penal Law § 240.40. But this section was effectively repealed by chapter 1068 of the Laws of 1974.[4]
It is unclear, in the wake of Lee (supra), if our State Legislature intended to permit an arrest for mere possession of an open container, even with a demonstrated intent to drink in public, by dint of a local ordinance. For example, Alcoholic Beverage Control Law § 65-c prohibits possession of an alcoholic beverage, with intent to consume, by a person under the age of 21. Notably, however, that provision contains an explicit provision that prohibits arrests by police officers for violation of the section, notwithstanding CPL article 140. Presumably, this was done with an eye toward the dangers of arbitrary enforcement discussed in Lee and Papichristou (supra). If the Court of Appeals were to approve arrests for a violation of New York City’s Open Container Law, as advocated here by the People, then an anomalous situation could result with some frequency: police would be prohibited from arresting an under *599 age drinker, by reason of the Alcoholic Beverage Control Law, but at the same time, the police could arrest an adult companion in mere possession of an open container who is otherwise allowed to drink alcohol.
In any event, it is unnecessary to reach the issue of the constitutionality of the Open Container Law in this case. Here, the police never ascertained, either before or after the arrest, whether there was any alcohol, or any liquid at all, in the container in question. When Officer Tergesen initiated pursuit of Mr. Bothwell, he only knew that Mr. Bothwell possessed a bottle in a paper bag. As he continued his pursuit, he claims to have recognized the bottle as being a Heineken beer bottle. However, the officer did not know, and never determined, if the bottle was empty or otherwise contained anything at all.
The Administrative Code, by its own terms, creates a presumption that a person in possession of an open container containing an alcoholic béverage possesses the same with an intent to consume the contents. That presumption is not available as justification for an arrest when the bottle is empty or when there is no evidence at all of a liquid. Further, there is nothing in evidence before this court to suggest that the bottle contained anything, let alone an alcoholic beverage. While a legitimate argument might be made in support of the statutory presumption when the prerequisite alcoholic beverage is observed, the Administrative Code does not purport to presume an intent to consume alcohol when no liquid or alcoholic beverage is in evidence.
The People ask the court to permit an arrest where no liquid is observed in an open container upon a determination that it was reasonable for the officer to presume that it contained alcohol. This is an argument that goes well beyond the outer limits of Lee (supra). In effect, the argument is that any person holding a beer bottle in public should be arrested, even if it turns out, subsequently, that the bottle is empty. While Lee condemned, for overbreadth, a police power to arrest for mere possession of alcohol, the People seek much more in this case. They advocate police authority to arrest for mere possession of a bottle premised upon a stack of inferences. They argue that it should be permissible for a police officer to presume that a bottle contains alcohol and then, upon that presumption, they would stack the further inference that the suspect possess the supposed alcohol with the intent to consume it in public. If the problem in Lee was the potential for “arbitrary” arrests for possession of alcohol and the placement of “unfettered discretion” *600 in the hands of the police, then certainly the same argument holds for arrests based upon mere possession of a bottle alone, filled with nothing more than inferences and presumptions.
Further, the Returnable Container Act, ECL 27-1001—27-1019 (otherwise known as the Bottle Bill), requires handling and correct disposal of empty, open containers, including beer bottles. Certainly, the Legislature never envisioned that mere handling of an open beer bottle in New York City would give cause for arrest.
Finally, as previously noted, CPL 140.10 only authorizes an arrest for an offense committed in the presence of the police officer. As the officer testified, and this court finds, the police never saw the defendant drinking from the bottle. If the defendant had been drinking in public, he did so prior to the police observation and pursuit. In other words, in the absence of any evidence that the bottle still contained beer, the offense, if it was committed at all, was not committed in the presence of the police officer. As such, an arrest pursuant to CPL 140.10 was not authorized.
Since the police in this case were not authorized to temporarily seize the defendant and were not authorized to arrest the defendant, the forcible seizure in this case was unlawful. Accordingly, the drugs and statements acquired as a consequence of the forcible seizure may not be introduced into evidence at Mr. Bothwell’s trial.

. Although the People ask this court to find that the officer saw the defendant drinking from the bottle, the record is clear that the officer never made such an observation. Officer Tergeson initially made the conclusory statement that he saw the defendant “drinking”. However, upon closer questioning the officer, on five occasions, made it clear that what he in fact observed was the defendant holding, and not drinking from, the bottle. Based upon this court’s observation of the witness and the manner by which he gave testimony, the court specifically finds that the initial assertion, that he saw the defendant drinking from the bottle, was a misstatement by the officer which the officer corrected. The court does not credit the initial statement, and instead credits the five subsequent and very specific statements by the officer that he only saw the defendant holding the bottle, but did not actually see the defendant drinking from the bottle.

. Even though CPL 140.50 does not reference inquiries under level I or level II, it follows a fortiori that intrusions on less than reasonable suspicion may not be justified, and are not permitted, in minor cases where a level III detention is prohibited. In any event, as previously noted, the seizure in this case went well beyond the level of intrusion permitted by simple levél II suspicion.

. Interestingly, the Lee Court noted, “While, of course, a container must be opened or unsealed to permit consumption, it cannot be presumed that every opening or unsealing is for the purpose of direct human consumption or least of all for the purpose of direct human consumption in a public place.” (People v Lee, 58 NY2d, supra, at 496 [emphasis added].)

. At the time, there was no open container law in New York City. The City Council passed Introductory Number 647-A, banning possession of open containers of alcohol with the intent to consume. However, Mayor Beame vetoed the provision citing the Legislature’s belief that it would be “disturbingly inconsistent” to outlaw public drinking when the Legislature had recently repealed public intoxication because it “was no longer considered a crime.” In addition he cited “an inherent danger that this measure could be enforced selectively, and in a discriminatory manner.” (Veto message, Mar. 26, 1976, contained in Bill Jacket, Local Laws, 1979, No. 16 of City of NY.) The current provision in the Administrative Code has its origins in Introductory Number 5 of 1978 which was presented to Mayor Koch. Once again, some urged a veto in the belief that public intoxication was a medical, not a criminal, problem. (See, e.g., mem of NY City Dept of Mental Health & Mental Retardation Servs, Dec. 5, 1978.) In approving the measure, the Mayor expressed his confidence that the police “will endeavor to enforce the law as fully and fairly as possible.” (Approval message, May 9, 1979.)