OPINION OF THE COURT
Dan Lamont, J.
*528 The indictment accuses the defendant of committing the crimes of criminal possession of a weapon in the second degree in violation of Penal Law § 265.03 (3), a class C violent felony, and unlawful possession of marihuana in violation of Penal Law § 221.05, a violation. The charges are that on or about September 16, 2007 at approximately 8:25 p.m., at Troy-Schenectady Road and Grove Avenue, Town of Colonie, County of Albany, the defendant Joel Hernandez did knowingly possess a loaded Glock 19, 9 millimeter semiautomatic handgun outside his home or place of business and did knowingly and unlawfully possess a quantity of marihuana.
Remedy Sought by Defendant
(1) Tangible evidence: Defendant, claiming to be aggrieved by an unlawful stop of a motor vehicle in which he was a passenger and an unlawful search and seizure, has made a motion to suppress tangible property seized by the police from his person.
(2) Statements: Defendant moves this court for an order suppressing oral statements allegedly made by him to the police on September 16, 2007 upon the ground that: (a) such alleged oral statements to the police were the fruit of an allegedly unlawful motor vehicle stop, unlawful seizure of his person, and an unlawful arrest, and (b) such alleged oral statements were involuntarily made within the meaning and intent of CPL 60.45.
Burden of Proof
(1) Tangible evidence: The People bear the burden of going forward to show the legality and reasonableness of the police conduct; however, a defendant who challenges the legality of a search and seizure bears the ultimate burden of proving by a preponderance of the evidence that the tangible evidence was illegally seized and should not be used against him.
(2) Statements: An admission or confession will not be received in evidence at trial unless the People prove beyond a reasonable doubt that such statement was knowingly, freely, and voluntarily made by the defendant.
Relative to the defendant’s motion pursuant to the Fourth Amendment to suppress his alleged oral statements to the police as the fruit of an allegedly unlawful motor vehicle stop, unlawful seizure of his person and unlawful arrest, the People have the burden of going forward to show the legality of the police conduct in the first instance; that is, the People must initially show that the stop of the vehicle and the forcible deten *529 tion and arrest of the defendant were lawful. The defendant, however, bears the ultimate burden of proving by a preponderance of the evidence that his alleged oral statements were the product of an unlawful stop and seizure and should therefore be suppressed as the fruit of the poisonous tree.
Pretrial Hearing: Credibility
A pretrial suppression hearing was conducted before the undersigned on January 25, 2008.
Police Officer Daniel Grebbert and Investigator James Gerace from the Town of Colonie Police Department testified for the People. Officer Grebbert and Investigator Gerace each appeared frank, candid, and trustworthy, and their testimony had the general force and flavor of credibility. The People’s exhibit received in evidence is found authentic, reliable, and worthy of consideration by the court.
The defendant, Joel Hernandez, who has previously been convicted of a theft related offense and prior drug related offenses, testified in his own behalf. He is clearly an interested witness — interested in the outcome of this proceeding, and his testimony appeared colored by his interest. Although I credit some portions of the defendant’s testimony, I disbelieve other portions of his testimony — particularly his testimony that he was never advised of his Miranda rights by anyone, including Investigator Gerace, on September 16, 2007, and his testimony that he did not actually make many of the oral statements attributed to him by Investigator Gerace.
Based upon the credible testimony and evidence adduced at the suppression hearing, the undersigned makes the following findings of fact:
Findings of Fact
On September 16, 2007 at approximately 8:25 p.m., Officer Grebbert observed a grey Ford Expedition with very dark tinted windows exit Surry Hill Drive and turn right onto Swatling Road. Officer Grebbert followed the vehicle and observed the vehicle drift across the double yellow line on Swatling Road near the Rose Garden Apartments. The vehicle made a right hand turn onto Troy-Schenectady Road — where Officer Grebbert observed the vehicle drift from the curb lane to the left lane and then back to the curb lane of the road. Officer Grebbert activated his lights and initiated a traffic stop. The Ford Expedition immediately complied.
*530 Officer Grebbert approached the passenger side of the vehicle and was engaged by the front seat passenger, Robinson — who stated that he was the owner of the vehicle. Due to the heavy dark tint on the windows and the fact Officer Grebbert was alone, Officer Grebbert asked the driver of the vehicle to roll down all of the windows in the Expedition. There were five people in the vehicle: the driver, the front seat passenger, two passengers in the second row of seating, and one passenger in the third row of seating. Officer Grebbert noticed a strong odor of burnt marihuana emanating from the vehicle.
Robinson supplied the registration to the vehicle, but did not have any identification. The name on the registration did not match Robinson’s name. The driver provided a name and a date of birth, but did not have any identification. Robinson stated that the owner of the vehicle was in the third row of seating. The third row passenger, McRay, was asked for identification and provided a license which matched the registration. Officer Grebbert also asked the names and dates of birth of the two second row passengers and was told Johnson and Joel Hernandez with their respective dates of birth. Officer Grebbert then radioed in all of the names and dates of birth to the dispatcher. Officer Molinosky arrived while Officer Grebbert was on the radio.
Officer Grebbert informed Officer Molinosky of the burnt marihuana smell. Officer Grebbert then approached the driver’s side of the vehicle while Officer Molinosky went to the passenger’s side. Officer Grebbert asked the driver to exit and she did. When asked about the smell of burnt marihuana, she told the officers that the male occupants had just smoked a blunt at her townhouse. Officer Grebbert then made a general inquiry to all of the occupants of the vehicle of “Where is the smell coming from?” and “Have you smoked?” Officer Grebbert asked the front seat passenger, Robinson, to exit and noticed the smell of alcohol and marihuana emanating from him. Officer Grebbert asked Robinson for his consent to search the vehicle (Robinson had earlier identified himself as the owner of the vehicle). Robinson stated it was okay to search the vehicle if the third row passenger, McRay, said it was okay (the vehicle was registered under McRay’s name). Officer Grebbert asked McRay to exit the vehicle and told McRay that he smelled marihuana on him and in the vehicle and asked if he could search the vehicle. McRay said it was okay to search if Robinson said it was okay. Robinson then said it is okay to search, but nothing is in there. *531 One of the second row passengers, Johnson, then exited the vehicle and was asked if he had any marihuana on him. Johnson said no at first, then produced a very small plastic container containing what appeared to be marihuana. Officer Grebbert asked Johnson if he had any other drugs or weapons on him. Johnson said no and Officer Grebbert patted him down, noticed what appeared to be the handle of a gun in his back pocket, and seized a black semiautomatic gun. Officer Grebbert then drew his service weapon and ordered all of the occupants of the vehicle to “get on the ground now!” Defendant Hernandez was still in the vehicle at that time, but he was also ordered out of the vehicle and to the ground. Defendant Hernandez complied with Officer Grebbert’s directions. Officer Molinosky then called for additional back-up.
When additional back-up arrived, the officers began patting down all of the occupants of the vehicle. Police Officer Derek Breslin asked the defendant Hernandez if he had any weapons, and the defendant responded “yeh.” Officer Breslin asked the defendant what it was, and he responded: “a Glock.” Officer Breslin asked where, and the defendant replied: “waistband.” Officer Breslin then removed a loaded Glock from defendant’s waistband and then placed him in handcuffs. A small amount of marihuana was also recovered from the defendant. No evidence of burnt marihuana was recovered from the vehicle. Officer Grebbert issued vehicle and traffic citations for excessive tint and failure to keep right.
On September 16, 2007 at approximately 11:10 p.m., in an interview area of the Town of Colonie Police Station, Investigator Gerace introduced himself to the defendant. Investigator Gerace read the defendant his Miranda rights from a preprinted form (People’s exhibit 1). When asked if he understood the rights just read to him, the defendant stated: “yes.” When asked if he agreed to give up his rights and talk to Investigator Gerace now, the defendant stated: “yes.” Investigator Gerace then asked the defendant why he was carrying a firearm. The defendant hesitated and did not respond to the question. Investigator Gerace then put his pen and paper down, told the defendant that he just wanted to talk and “this will he off the record.” The defendant then proceeded to make various oral statements in response to Investigator Gerace’s questions — many of which the defendant denied making. The defendant did not ask for an attorney.
*532 Conclusions of Law
(1) Tangible evidence: “[T]he degree of suspicion required to stop a car is minimal. Nothing like probable cause ... is required” (see People v Ingle, 36 NY2d 413, 415 [1975]). Interfering with a moving vehicle requires reasonable suspicion (see People v Ocasio, 85 NY2d 982 [1995]; People v May, 81 NY2d 725 [1992]). The stop of an automobile constitutes a seizure, and an officer may stop a vehicle to investigate criminal activity when he has reasonable suspicion that its occupants have been engaged, are presently engaged, or are about to engage in conduct in violation of the law (see People v Sobotker, 43 NY2d 559 [1978]). The police may stop a vehicle for a traffic violation when they have a reasonable suspicion based upon articulable facts that the driver has violated the Vehicle and Traffic Law (see Delaware v Prouse, 440 US 648 [1979]; People v Ingle, supra).
In the instant case, Officer Grebbert observed the grey Ford Expedition with very dark tinted windows drift across the double yellow line on Swatling Road and drift within the two lanes for traffic on Troy-Schenectady Road. Based upon these observations, this court holds and determines that Officer Grebbert was justified in stopping the Ford Expedition for a traffic infraction (see Delaware v Prouse, supra).
Upon approaching the passenger’s side of the vehicle, Officer Grebbert spoke to the front seat passenger. Since there were five occupants in the vehicle and the windows were heavily tinted, Officer Grebbert asked the driver to roll down the windows. Officer Grebbert then smelled a strong odor of burnt marihuana emanating from the vehicle. The defendant took the stand during the suppression hearing and did not refute Officer Grebbert’s testimony that there was a strong odor of burnt marihuana emanating from the vehicle. Based upon the uncontested proof that there was a strong odor of burnt marihuana emanating from the vehicle, this court holds and determines under the totality of the circumstances that Officer Grebbert had probable cause to believe that the vehicle contained marihuana — which thereby provided the police with sufficient probable cause to remove the occupants and to search the vehicle (see People v Yancy, 86 NY2d 239 [1995]; People v Galak, 81 NY2d 463 [1993]; People v Pena, 209 AD2d 744 [3d Dept 1994], Iv denied 85 NY2d 941 [1995]).
In addition thereto, prior to the defendant Hernandez being ordered from the vehicle, Officer Grebbert became aware that: *533 the male passengers in the vehicle had smoked a blunt at the driver’s townhouse; passenger Johnson had a small plastic container containing marihuana; and passenger Johnson had a semiautomatic handgun on his person. This court further holds and determines that Officer Grebbert (at the very least) had a reasonable suspicion, supported by articulable facts and the reasonable inferences drawn therefrom, to believe that the defendant was involved in a felony or misdemeanor — which authorized him to forcibly stop and detain the defendant (see People v Hicks, 68 NY2d 234 [1986]; see also People v Hollinan, 79 NY2d 181 [1992]; People v De Bour, 40 NY2d 210 [1976]; People v Cantor, 36 NY2d 106 [1975]). Based upon the totality of the circumstances known to Officers Grebbert and Breslin at this point in time, Officer Breslin had a reasonable suspicion, if not probable cause, to believe that the defendant possessed a weapon sufficient to justify a pat down (see People v Rosa, 30 AD3d 905 [3d Dept 2006]; see also Terry v Ohio, 392 US 1 [1968]; People v Benjamin, 51 NY2d 267 [1980]).
Upon Officer Breslin finding the loaded gun on the defendant, Officer Breslin had probable cause to place the defendant Joel Hernandez under arrest (see People v McRay, 51 NY2d 594, 602 [1980]). Any marihuana recovered was seized incident to the lawful arrest of defendant (see Chimel v California, 395 US 752 [1969]; People v Whitaker, 64 NY2d 347 [1985]).
(2) Statements: When Officer Breslin arrived at the scene, the defendant had been ordered out of the vehicle and onto the ground by Officer Grebbert. Accordingly, the defendant was for all intents and purposes in custody at this time. Prior to patting the defendant down for weapons, Officer Breslin asked the defendant if he had a gun, what it was, and where it was. The defendant responded “yeh, a Glock” which was in his waistband. Although the defendant was in custody at the time of Officer Breslin’s questions, this court holds and determines that such questioning fits squarely within the public safety exception carved out by New York v Quarles (467 US 649 [1984]) and its progeny. Where the police were confronted with five individuals, one of whom already had a gun, it was reasonable for the police officers’ own safety to ask the defendant if he had a gun prior to patting him down (see People v Johnson, 46 AD3d 276 [1st Dept 2007]; People v Scotchmer, 285 AD2d 834 [3d Dept 2001]). Officer Breslin then recovered a loaded Glock handgun from defendant’s waistband and also recovered a small amount of marihuana from defendant.
*534 The defendant was placed under arrest for criminal possession of a weapon in the second degree. The defendant was transported to the Town of Colonie Police Station. At approximately 11:10 p.m., Investigator Gerace fully advised the defendant of his Miranda rights from a preprinted form. The defendant stated that he understood his Miranda rights and agreed to speak to Investigator Gerace. The defendant did not request to speak to an attorney. Investigator Gerace asked the defendant why he was carrying a firearm. The defendant hesitated and did not respond to the question. Investigator Ger-ace then put his pen and paper down, told the defendant that he just wanted to talk and “this will be off the record.”
In People v Bolla (112 Mise 2d 703 [Sup Ct, Erie County 1982]), the only New York case found with a similar fact pattern, a district attorney prior to the administration of any Miranda warnings told a defendant that anything the defendant told him would be “off the record.” The court in People v Bolla (supra) determined that the “off the record” statement by the District Attorney, without Miranda warnings, required the suppression of the resulting statements as involuntary. In dicta, the court also held that the administration of Miranda warnings and a waiver by the defendant would not have changed the result. The police are permitted to lie and use deceptive tactics in their questioning of defendants — provided that the deception is not so “fundamentally unfair as to deny due process” (see People v Tarsia, 50 NY2d 1, 12 [1980]; People v Berumen, 46 AD3d 1019 [3d Dept 2007]; People v Dishaw, 30 AD3d 689 [3d Dept 2006]).
While the particular fact pattern presented herein does not appear to have been addressed by the courts in New York State, the New Jersey Appellate Division has held “that the statement, made immediately following administration of Miranda warnings and after an assurance from an officer that defendant could make a statement ‘off the record,’ was not only obtained in violation of Miranda but was involuntary” (see State v Pillar, 359 NJ Super 249, 257, 820 A2d 1, 5 [2003]). This court holds and determines that Investigator Gerace’s promise to speak with defendant “off the record” is a promise which is so fundamentally unfair as to deny the defendant due process (see People v Tarsia, supra). In essence, Investigator Gerace negated a Miranda right by leading or causing the defendant to believe that anything he said “off the record” would not be used against him in a court of law. This court agrees with the logic espoused *535 in New Jersey v Pillar (supra) that such a promise totally undermines and eviscerates the Miranda warnings just given to defendant at the very moment such warnings were designed to protect a defendant in custody’s constitutional rights, and that such a promise goes to the very heart of the declarant’s reservations and reluctance (which defendant herein exhibited) about giving a statement. Accordingly, this court holds and determines that the oral statements allegedly made by the defendant to Investigator Gerace were not only obtained in violation of Miranda, but were also involuntarily made, and should therefore be and the same are hereby suppressed.
Conclusion
(1) Tangible Evidence: This court holds and determines that the defendant’s motion to suppress tangible property consisting of a loaded 9 millimeter Glock handgun and marihuana seized from his person should be and the same is hereby denied.
(2) Statements: This court holds and determines that the defendant’s motion for an order suppressing oral statements allegedly made by him to Officer Breslin during the traffic stop should be and the same is hereby denied in all respects. This court further holds and determines that the defendant’s motion for an order suppressing oral statements allegedly made by him to Investigator Gerace at the Town of Colonie Police Station should be and the same is hereby granted.