◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DANNEL HILL, Appellant. [898 NYS2d 553]—

Appeal by the defendant from a judgment of the Supreme Court, Westchester County (Neary, J.), rendered May 9, 2007, convicting him of criminal possession of a weapon in the third degree (three counts), criminal trespass in the first degree, criminal trespass in the third degree, and resisting arrest, upon a

jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress physical evidence and statements he made to law enforcement officials.

Ordered that the judgment is affirmed.

Here, officers assigned to the Housing Unit of the City of Yonkers Police Department (hereinafter the Housing Unit) were patrolling a public housing project named Mulford Gardens. That project had been the site of several recent shooting incidents, including a homicide involving rival factions from Mulford Gardens and another housing project. Shortly after midnight on July 24, 2006, the police observed four men congregating in front of a building at Mulford Gardens. Approximately 15 to 30 minutes later, the police observed four men, this time in the vestibule of the subject building. Two police officers approached the front entrance of the building, while two other police officers entered from the rear of the building. The police were aware that people sometimes exited the building from the rear door.

As the first two officers approached the front of the building, the defendant exited from the vestibule, and into the building through the main entrance door. He then proceeded down a flight of stairs leading to an area near the rear exit of the building, where he was met by the arresting officer. The arresting officer asked the defendant why he was in the building and if he lived there. The defendant explained that he was visiting his girlfriend, who lived in the building. However, when the defendant knocked on the door of a nearby apartment, there was no answer. At that point, the arresting officer asked the defendant to produce identification. The defendant produced an identification card issued by the New York State Department of Motor Vehicles. When the arresting officer observed the defendant's name, he recalled that he had previously seen a poster on the wall of the Housing Unit containing the defendant's name and photograph, indicating that he was "known to carry a gun." At that point, the arresting officer directed the defendant to raise his hands. When the defendant complied, his t-shirt rose, allegedly revealing what appeared to be a portion of the handle of a gun in the right front pocket of his pants.

The arresting officer testified that he intended to pat down the defendant to determine whether he had a weapon, but that the defendant ran out of the rear exit of the building. The arresting officer chased the defendant on foot. After a short struggle, the officer apprehended the defendant and recovered a loaded nine millimeter weapon. The defendant also made several inculpatory statements to the police.

After a hearing, the Supreme Court denied those branches of the defendant's omnibus motion which were to suppress the gun and to suppress all but one of the statements he made to the police.

The credibility determinations of the suppression court must be accorded weight, as it had the peculiar advantages of having seen and heard the witnesses (*see People v Prochilo*, 41 NY2d 759, 761 [1977]). In this case, there is no basis to disturb the determination of the Supreme Court denying those branches of the defendant's omnibus motion which were to suppress the gun and his statements to police.

The initial encounter between the defendant and the police was lawful in its inception. The information already possessed by the arresting officer provided him with an objective, credible reason to approach the defendant and ask him why he was in the building and whether he lived there. After the defendant told the arresting officer that his girlfriend lived in the building, and the defendant knocked on the door of an apartment but failed to receive a response, the arresting officer was justified in requesting the defendant to produce identification (*see People v Moore*, 6 NY3d 496, 498-499 [2006]; *People v McIntosh*, 96 NY2d 521, 527 [2001]; *People v Bora*, 83 NY2d 531, 534-535 [1994]; *People v Hollman*, 79 NY2d 181, 184-185 [1992]; *People v De Bour*, 40 NY2d 210, 223 [1976]; *People v Hendricks*, 43 AD3d 361, 363 [2007]; *cf. Matter of Emmanuel O.*, 32 AD3d 948 [2006]).

Since the arresting officer recalled that he had previously seen a poster on the wall of the Housing Unit containing the defendant's name and photograph, indicating that he was known to carry a gun, he was justified in directing the defendant to raise his hands, as he had reasonable suspicion that the defendant had committed or was committing a felony or misdemeanor (*see People v Roque*, 99 NY2d 50, 54 [2002]; *People v Hollman*, 79 NY2d at 185; *People v De Bour*, 40 NY2d at 223). The information contained in the poster, as testified to by the arresting officer, was the equivalent of an anonymous tip containing sufficient predictive information that the defendant possessed a gun (*see People v Moore*, 6 NY3d at 499; *People v Harry*, 187 AD2d 669 [1992]; *cf. Florida v J.L.*, 529 US 266 [2000]). In addition, the information in the poster contained sufficient information to trigger the common-law right of inquiry, which is "activated by a founded suspicion that criminal activity is afoot" (*People v De Bour*, 40 NY2d at 223; *see People v Hollman*, 79 NY2d at 184-185), and which permitted the arresting officer to take "the minimally intrusive step of directing [the] defendant

to raise his hands" (*People v Herold*, 282 AD2d 1, 8 [2001]). Once the defendant's t-shirt rose, allegedly revealing a portion of what appeared to be the handle of a gun, and the defendant fled, the arresting officer had probable cause to arrest the defendant (*see People v Hollman*, 79 NY2d at 185; *People v Jalil*, 283 AD2d 371, 372 [2001]).

The defendant's further contention that the evidence was legally insufficient to support the verdict of guilt with respect to the crime of criminal trespass in the third degree is unpreserved for appellate review, as the defense counsel merely made a general motion for a trial order of dismissal based upon the People's alleged failure to make out a prima facie case, and did not raise a specific challenge to the sufficiency of the evidence with respect to that charge (*see* CPL 470.05 [2]; *People v Hawkins*, 11 NY3d 484, 491-492 [2008]). In any event, viewing the evidence in the light most favorable to the prosecution (*see People v Contes*, 60 NY2d 620 [1983]), we find that the evidence was legally sufficient to establish his guilt of that crime beyond a reasonable doubt. The evidence established that there was a sign in the area of the entrance to the building which conspicuously posted rules prohibiting trespassing (*see* Penal Law § 140.10 [e]; *cf. Matter of James C.*, 23 AD3d 262, 263 [2005]; *People v Mackey*, 16 Misc 3d 398, 399 [2007]).

The defendant's contention that the Supreme Court imposed a maximum sentence as a penalty for exercising his right to a jury trial does not require reversal. The defendant's further contention that his sentence was based on a charge upon which he was acquitted is without merit (*see* CPL 470.05 [2]; *People v Matthews*, 1 AD3d 530 [2003]).

The People incorrectly concede that indeterminate sentences should have been imposed on the defendant's conviction of two of the counts of criminal possession of a weapon in the third degree, instead of the determinate sentences imposed by the Supreme Court. The defendant was sentenced as a second violent felony offender and convicted of a class D felony and, thus, must be sentenced to a determinate term of imprisonment of between five and seven years on each of those two counts (*see* Penal Law § 70.04 [3] [c]).

The sentence imposed was not excessive (*see People v Suitte*, 90 AD2d 80 [1982]). Dillon, J.P., Balkin, Dickerson and Lott, JJ., concur.