█ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v BONELLY FERNANDEZ, Respondent. [928 NYS2d 293]—

On April 25, 2009, at about 11:00 P.M., Police Officers Diaz, Walters and Bektashaj were on patrol in plain clothes in an

unmarked car. While driving, Diaz's attention was drawn to defendant because, even though it was an unusually warm night, he was wearing a brown sweatshirt with the hood over his head, and he was crouching behind an SUV and looking at two men.

Diaz saw that defendant was holding something near his waistband, and suspected it was a gun. However, he could not see defendant's hand and did not see a weapon. Walters thought that defendant was holding something, inside the pocket of his sweatshirt, that may have been a weapon. However, when asked why defendant's particular hand position suggested a weapon, Walters said he did not know. Bektashaj thought that defendant was holding something in the pocket of his sweatshirt.

Based on these observations, the officers exited the car to investigate. With their shields displayed, Diaz and Bektashaj approached defendant from the front, and Walters approached from behind. When Diaz made eye contact, defendant turned away towards Walters and "basically walked into [him]."

Walters testified that he stopped defendant, whose hands were in the pocket of his sweatshirt, and asked him if he had any weapons on him. Defendant, who, Walters acknowledged, was not free to leave, said no, and Walters patted down the area where he saw defendant's hands. He felt a hard object and lifted up defendant's sweatshirt and removed a gun that was tucked into defendant's waistband. According to Bektashaj, who had not heard Walters ask defendant any questions, Walters reached for the gun as soon as he stopped defendant.

On this record, the officers, at most, had a common-law right to inquire based on a "founded suspicion that criminal activity [was] afoot" (see People v De Bour, 40 NY2d 210, 223 [1976]), i.e., to ask defendant whether he had any weapons on him (see People v Ward, 22 AD3d 368 [2005], lv denied 6 NY3d 782 [2006]). They also had a right to ask him to remove his hands from his pockets as a precautionary measure (see Matter of Anthony S., 181 AD2d 682 [1992], lv denied 80 NY2d 753 [1992]).

However, they did not have the reasonable suspicion that defendant had committed, was committing or was about to commit a crime that was required to justify forcibly stopping and detaining him (see De Bour, 40 NY2d at 223). And they did not have the additional reasonable suspicion that defendant was armed and dangerous that was required to justify frisking him (see People v Batista, 88 NY2d 650, 654 [1996]). The officers were on routine patrol and were not responding to a report of a crime. Walters testified that at the time he approached defendant, defendant was not breaking the law, and he did not see

what was in defendant's sweatshirt pocket. Nor is there any testimony that defendant made any suspicious or threatening gestures towards the officers.

The fact that defendant's hand was near his waistband or in his sweatshirt pocket, absent any indication of a weapon, such as the visible outline of a gun, did not create a reasonable suspicion that defendant had committed or was about to commit a crime (*see People v Sierra*, 83 NY2d 928, 930 [1994]; *People v Riddick*, 70 AD3d 1421, 1422-1423 [2010], *lv denied* 14 NY3d 844 [2010]; *People v Santiago*, 64 AD2d 355, 361 [1978]). Nor does the fact that defendant was located in an alleged high crime area supply that requisite reasonable suspicion, in the absence of "other objective indicia of criminality" (*see People v Powell*, 246 AD2d 366, 369-370 [1998], *appeal dismissed* 92 NY2d 886 [1998]). Concur—Andrias, J.P., Sweeny, Renwick, Freedman and Manzanet-Daniels, JJ.