█ In the Matter of SHAKIR J., a Person Alleged to be a Juvenile Delinquent, Appellant. [990 NYS2d 85]—

In a juvenile delinquency proceeding pursuant to Family Court Act article 3, Shakir J. appeals from an order of disposition of the Family Court, Kings County (McElrath, J.), dated

April 10, 2013, which, upon an order of fact-finding of the same court dated January 29, 2013, made upon his admission, finding that he had committed an act which, if committed by an adult, would have constituted the crime of criminal possession of a weapon in the second degree, adjudged him to be a juvenile delinquent, and placed him on probation for a period of 12 months. The appeal brings up for review the denial, after a hearing, of the appellant's motion to suppress physical evidence.

Ordered that the appeal from so much of the order of disposition as placed the appellant on probation for a period of 12 months is dismissed as academic, without costs or disbursements, the motion to suppress physical evidence is granted, the fact-finding order is vacated, the petition is denied, the proceeding is dismissed, and the matter is remitted to the Family Court, Kings County, for further proceedings in accordance with Family Court Act § 375.1.

The appeal from so much of the order of disposition dated April 10, 2013, as placed the appellant on probation for a period of 12 months has been rendered academic, as the period of probation has expired (*see Matter of David H.*, 88 AD3d 710 [2011]; *Matter of Vanna W.*, 45 AD3d 855, 856 [2007]). However, because there may be collateral consequences resulting from the adjudication of delinquency, the appeal from so much of the order of disposition dated April 10, 2013, as adjudicated the appellant a juvenile delinquent, and which brings up for review the fact-finding order, has not been rendered academic (*see* Family Ct Act § 783; *Matter of Dorothy D.*, 49 NY2d 212 [1980]).

On September 17, 2012, at approximately 7:50 p.m., two police officers in an unmarked vehicle observed the appellant, a "young-looking kid" who was 12 years old at the time, standing on the street in a high crime area, holding his waistband and looking over his shoulder "in a panicked state," as if "looking for somebody." The officers surmised that the appellant may have been fleeing from someone.

One of the officers asked the appellant what was going on, and the appellant responded by removing his hands from his waistband, placing his hands at his side, and replying that he did not have anything. The officer responded with more questions, to the effect of "[w]hat do you have, what are you holding in your waistband." The appellant's hands moved towards his waistband and back to his sides. The officer asked the appellant to pick up his shirt. The appellant lifted up the back of his shirt, and refused to pull up the front of his shirt. The officer would not accept his refusal, and demanded that he lift the front of his shirt. The officer claimed that when the appellant

complied with his demand, the officer saw the butt of a gun in the appellant's waistband, got out of the car, drew his own firearm, and approached the appellant, who fled the scene with the officer in pursuit. During the course of the pursuit, the appellant abandoned a firearm in an area covered by wood chips and leaves.

The Family Court found that the police were justified in asking the appellant to pull up his shirt based upon a founded suspicion that criminal activity was afoot (*see People v De Bour*, 40 NY2d 210, 223 [1976]), and once the appellant raised the front of his shirt, revealing the butt of a firearm, the police had reasonable suspicion that the appellant was committing or was about to commit a crime, justifying a forcible stop of the appellant. Accordingly, the motion to suppress physical evidence was denied.

In *People v De Bour* (40 NY2d 210 [1976]), the Court of Appeals established a graduated four-level test for evaluating the propriety of police encounters when a police officer is acting in a law enforcement capacity (*see People v Moore*, 6 NY3d 496, 498-499 [2006]). The first level permits a police officer to request information from an individual, and merely requires that the request be supported by an objective credible reason, not necessarily indicative of criminality (*see People v De Bour*, 40 NY2d at 223; *People v Moore*, 6 NY3d at 498). The second level, known as the "common-law right of inquiry," requires a founded suspicion that criminal activity is afoot, and permits a somewhat greater intrusion short of a forcible seizure (*see People v Moore*, 6 NY3d at 498-499). The third level under *De Bour* permits a seizure, meaning that a police officer may forcibly stop and detain an individual, based upon a "reasonable suspicion" that an individual is committing, has committed, or is about to commit a crime (*see People v De Bour*, 40 NY2d at 223; *see also People v Moore*, 6 NY3d at 499). Finally, the fourth level under *De Bour* authorizes an arrest based on probable cause to believe that a person has committed a crime (*see People v De Bour*, 40 NY2d at 223; *see also People v Moore*, 6 NY3d at 499).

The appellant acknowledges in his brief that the police had a founded suspicion that criminal activity was afoot. At issue here is whether the officers could ask the appellant to lift his shirt, even after he refused, and then pursue him as he fled the scene. Based upon a founded suspicion that criminal activity is afoot, the subject may be asked to produce identification (*see People v Hill*, 72 AD3d 702 [2010]), may be asked whether he has weapons, and may be asked to remove his hands from his

pockets (*see People v Fernandez*, 87 AD3d 474 [2011]). However, asking a person to open his or her coat is an "intrusive step" which requires sufficient evidence of criminal activity to permit more than an inquiry by the police (*see People v Johnson*, 54 NY2d 958, 959 [1981]). Here, the police acknowledge they did not see an object until they took their "intrusive step" of demanding that the appellant lift up the front of his shirt after he refused to do so, whereupon a police officer pursued him with his gun drawn.

The appellant had the "right to be let alone" (*People v Moore*, 6 NY3d at 500). The police may lawfully pursue an individual if they have a reasonable suspicion that he or she has committed or is about to commit a crime (*see People v Holmes*, 81 NY2d 1056, 1056-1058 [1993]). However, in this case, the police only acquired a basis to pursue the appellant after they took the intrusive step of demanding that he raise the front of his shirt and saw the butt of a gun. Since the pursuit of the appellant was unlawful, the gun which he abandoned in response to the pursuit should have been suppressed (*see People v Brogdon*, 8 AD3d 290, 292 [2004]).

In view of the foregoing, the appellant's motion to suppress the gun should have been granted, and the fact-finding order must be vacated, the petition denied, and the proceeding dismissed. Dillon, J.P., Hall, Miller and Hinds-Radix, JJ., concur.