■ In the Matter of SHARIFF H., a Person Alleged to be a Juvenile Delinquent, Appellant. [997 NYS2d 718]—

Appeal from an order of disposition of the Family Court, Kings County (Michael Ambrosio, J.), dated September 27, 2013. The

order adjudicated the appellant a juvenile delinquent, upon a fact-finding determination, made upon his admission that he committed an act which, if committed by an adult, would have constituted the crime of criminal possession of a weapon in the second degree, and placed him on probation for a period of 18 months. The appeal from the order of disposition brings up for review the denial, after a hearing, of the appellant's motion to suppress physical evidence.

Ordered that the order of disposition is affirmed, without costs or disbursements.

The credibility determinations of the hearing court following a suppression hearing are entitled to great deference on appeal and will not be disturbed unless clearly unsupported by the record (*see People v Wheeler*, 2 NY3d 370, 374 [2004]; *People v Prochilo*, 41 NY2d 759, 761 [1977]; *People v Anderson*, 91 AD3d 789, 789 [2012]). Here, we find no basis to disturb the suppression court's denial of the appellant's motion to suppress physical evidence recovered from him, namely, a loaded handgun (*see People v William II*, 98 NY2d 93, 98 [2002]; *People v De Bour*, 40 NY2d 210, 215 [1976]).

The evidence adduced at the suppression hearing established that, in response to a radio call reporting a dispute inside of a McDonald's restaurant involving a group of people, a marked police van and an unmarked police vehicle responded to the scene. Immediately after arriving, police officers observed the appellant as he left the McDonald's restaurant with several people. Both of the officers who testified at the suppression hearing had been in the unmarked vehicle, wearing plain clothes. These two officers explained that, as they sat inside the unmarked vehicle, they observed the appellant clenching an object in his right jacket pocket that was heavy enough to cause the shoulders of his jacket to be misaligned toward the right. They testified that the appellant repeatedly turned around as he walked away from the restaurant, and looked toward the marked police van. The arresting officer further testified that he believed that the bulge in the appellant's right jacket pocket was a firearm because of the weight of the object, the way the appellant held onto the object, and the manner in which the appellant pressed his right arm against his side. He further testified that "a firearm is generally a very substantial object; it's heavy, so the pocket weighed down a little bit further than the left side."

While one of the plainclothes officers exited the unmarked vehicle with his shield visible, identified himself as a police officer, and began speaking to the appellant's companion, the arresting

officer observed the appellant fidget, make furtive movements toward his right jacket pocket, quicken his pace away from the officers, and look over his shoulder. Although the arresting officer had also exited the unmarked vehicle with his shield visible and identified himself as a police officer, several times the appellant pointedly ignored the arresting officer, continued to walk away, and did not comply with the officer's request to stop and to remove his hands from his pockets. As the arresting officer explained it at the suppression hearing, although the appellant continued to walk away from him, the arresting officer kept pace with the appellant until they were only an arm's length away from each other, at which point the arresting officer stepped in front of the appellant, and observed a bulge in the appellant's pocket that, according to the arresting officer, appeared to be a gun pointed at him. The arresting officer then stopped the appellant and conducted a limited pat-down search to determine if the bulge was a weapon by placing his hand "on the outside" of the appellant's right jacket pocket, whereupon he felt a "very distinct object," specifically, "the barrel, the handle, and the weight of the actual firearm." The arresting officer then conducted a complete frisk of the appellant, and recovered a handgun from his pocket.

Contrary to the appellant's contention, the totality of the circumstances gave the officers a founded suspicion that criminal activity was afoot, which gave rise to the officers' common-law right to inquire (see People v Gerard, 94 AD3d 592 [2012]; Matter of Jamaal C., 19 AD3d 144, 145 [2005]; People v Hernandez, 3 AD3d 325 [2004]; People v Pines, 281 AD2d 311, 312 [2001], affd 99 NY2d 525 [2002]; People v Niles, 237 AD2d 537, 537-538 [1997]; People v Esquilin, 236 AD2d 245, 246 [1997], affd 91 NY2d 902 [1998]; see generally People v Evans, 65 NY2d 629, 630 [1985]; People v Chestnut, 51 NY2d 14, 23 [1980]). While the appellant is correct that, initially, he had a constitutional right " 'to be let alone' and to refuse to respond to police inquiry" (People v May, 81 NY2d 725, 728 [1992], quoting People v Howard, 50 NY2d 583, 590 [1980]; see People v Nunez, 111 AD3d 854, 856 [2013]), under the circumstances presented here, the arresting officer's conduct in following and stepping in front of the appellant in an attempt to engage him was a continuation of the officer's own common-law right to inquire, not a seizure (see People v Moore, 6 NY3d 496, 500 [2006]; People v Bora, 83 NY2d 531, 535-536 [1994]; People v De Bour, 40 NY2d at 223; People v Bolta, 96 AD3d 773, 774 [2012]; People v Stevenson, 55 AD3d 486 [2008]; Matter of Jamaal C., 19 AD3d at 145). Hence, the conduct of the arresting officer in this regard was not improper.

Moreover, although the appellant continued to walk away from the arresting officer, the arresting officer kept pace with him, and ultimately approached him until they were only an arm's length away from each other. As such, it was proper for the officer to request that the appellant make his hands visible as a reasonable precautionary measure (*see Matter of Shakir J.,* 119 AD3d 792 [2014]; *People v Winchester,* 14 AD3d 939 [2005]; *Matter of Anthony S.,* 181 AD2d 682, 682-683 [1992]). Additionally, from this close proximity, the officer observed what appeared to be the outline of a firearm in the appellant's right jacket pocket, which appeared to be pointed at the officer, placing him in fear for his safety. The officer thus properly conducted a limited pat-down search to determine if the bulge was a weapon (*see Matter of Eduardo T.,* 266 AD2d 302 [1999]; *Matter of Anthony S.,* 181 AD2d at 683).

The presentment agency further established that the arresting officer, upon patting down the outside of the appellant's right jacket pocket, and feeling the outline of a gun, had a reasonable suspicion that the appellant was armed and, thus, properly frisked the appellant, whereupon he recovered a loaded handgun (*see* CPL 140.50 [3]; *Terry v Ohio,* 392 US 1, 29-30 [1968]; *People v Batista,* 88 NY2d 650, 654 [1996]; *People v De Bour,* 40 NY2d at 223; *Matter of Bryan G.,* 81 AD3d 568 [2011]; *People v Shackleford,* 57 AD3d 578, 579 [2008]; *People v Holmes,* 36 AD3d 714, 716 [2007]).

Accordingly, we find no basis to disturb the hearing court's determination to deny the appellant's motion to suppress the physical evidence recovered from him. Rivera, J.P., Hinds-Radix, Duffy and LaSalle, JJ., concur.