THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAMADAN ABDUL-MATEEN, Appellant. [4 NYS3d 310]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (McKay, J.), rendered November 16, 2011,

convicting him of criminal possession of a weapon in the second degree, upon a jury verdict, and bail jumping in the second degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing (Firetog, J.), of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is affirmed.

Police Officer Jonas Schwizer gave the following testimony at a suppression hearing. On the evening of June 30, 2008, he responded to a radio dispatch. The dispatch indicated that there was a black male wearing a white T-shirt and black pants who was carrying a firearm at a certain location in Brooklyn. Shortly thereafter, Schwizer arrived at that location and observed four individuals, three of whom matched the description given in the radio dispatch. Schwizer exited his vehicle, approached the four men, and asked them to show their hands. Two of the individuals who matched the description, and one who did not, put their hands up. The fourth individual, identified as the defendant, turned away from Schwizer with his hands at his waist area. The defendant did not comply with Schwizer's request to show his hands and Schwizer could not see them. Schwizer approached the defendant from behind, reached around and grabbed the defendant's hands, and then felt the handle of a firearm. The defendant immediately ran, causing a .45 semiautomatic firearm to dislodge and fall to the ground. The defendant was subsequently apprehended.

At the conclusion of the suppression hearing, the Supreme Court denied that branch of the defendant's omnibus motion which was to suppress the firearm.

"On a motion to suppress physical evidence, the People bear the burden of going forward to establish the legality of police conduct in the first instance" (*People v Hernandez*, 40 AD3d 777, 778 [2007]; *see People v Berrios*, 28 NY2d 361, 367-368 [1971]). In *People v De Bour* (40 NY2d 210 [1976]), the Court of Appeals established a graduated four-level test for evaluating the propriety of police encounters when a police officer is acting in a law enforcement capacity (*see People v Moore*, 6 NY3d 496, 498-499 [2006]). The first level permits a police officer to request information from an individual, and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality (*see People v Moore*, 6 NY3d at 498; *People v De Bour*, 40 NY2d at 223). The second level, known as the common-law right of inquiry, requires a founded suspicion that criminal activity is afoot, and permits a somewhat greater intrusion (*see People v Moore*, 6 NY3d at

498-499). The third level permits a police officer to forcibly stop and detain an individual. Such a detention, however, is not permitted unless there is a reasonable suspicion that an individual is committing, has committed, or is about to commit a crime (*see People v De Bour*, 40 NY2d at 223; *see also People v Moore*, 6 NY3d at 499). The fourth level authorizes an arrest based on probable cause to believe that a person has committed a crime (*see People v De Bour*, 40 NY2d at 223; *see also People v Moore*, 6 NY3d at 499). A defendant's later conduct "cannot validate an encounter that was not justified at its inception" (*People v Moore*, 6 NY3d at 498).

"Encounters between citizens and the police in public places are of an endless variety with no two being precisely alike" (*People v Finlayson*, 76 AD2d 670, 676 [1980]). Here, Schwizer properly exercised his common-law right of inquiry when he initially encountered the defendant, as the defendant matched the general description of a man with a gun at the subject location (*see People v Moore*, 6 NY3d at 498; *People v Spencer*, 84 NY2d 749, 753 [1995]; *People v Hollman*, 79 NY2d 181, 184 [1992]; *People v Stewart*, 41 NY2d 65, 69 [1976]; *People v Larmond*, 106 AD3d 934 [2013]; *People v Smith*, 207 AD2d 759 [1994]; *cf. Florida v J.L.*, 529 US 266 [2000]).

At this stage in the encounter, absent reasonable suspicion of criminal activity, Schwizer could not forcibly detain the defendant (*see People v May*, 81 NY2d 725 [1992]). However, during his common-law right of inquiry, Schwizer was permitted to ask the defendant to show or raise his hands as a self-protective measure (*see People v Herold*, 282 AD2d 1, 8 [2001]; *People v Oppedisano*, 176 AD2d 667, 668 [1991]; *see also People v Fernandez*, 87 AD3d 474, 475 [2011]; *People v Hill*, 72 AD3d 702 [2010]; *Matter of Anthony S.*, 181 AD2d 682, 682-683 [1992]).

The defendant's failure to comply with Schwizer's request to show his hands, coupled with the nature of the report, and the presence of the defendant's hands in his waist area, escalated the encounter and justified Schwizer's conduct in grabbing the defendant's hands as a self-protective measure (*see People v Wyatt*, 14 AD3d 441, 441-442 [2005]; *see also People v Abdul-Malik*, 298 AD2d 595 [2002]; Barry Kamins, New York Search & Seizure § 2.03 [1] at 2-38, 2-39 [2014]). Once Schwizer felt the firearm in the defendant's waist area, he was furnished with reasonable suspicion (*see People v Hollman*, 79 NY2d at 185; *People v De Bour*, 40 NY2d at 223; *People v Davenport*, 92 AD3d 689, 690-691 [2012]).

Contrary to the position of our dissenting colleague, the

testimony reflects that Schwizer did not see the defendant's hands when the defendant turned his back with his hands at his waist area when the officer asked the defendant to show his hands. In this regard, Schwizer initially testified he was unable to see the defendant's hands after the defendant turned away, but he could see the defendant's hands once he grabbed the defendant. Indeed, on cross-examination, Schwizer testified that, while the defendant's back was toward him, he could not see the defendant's hands. The record establishes that Schwizer's conduct was justified at its inception and reasonably related in scope and intensity to the circumstances of the encounter as it developed (*see People v Moyaho*, 12 AD3d 692, 693 [2004]; *People v Douglas*, 309 AD2d 517 [2003]). Therefore, the Supreme Court properly denied that branch of the defendant's omnibus motion which was to suppress the subject firearm.

The defendant contends that, during summation, the prosecutor improperly vouched for the credibility of witnesses, made inflammatory comments, and denigrated the defense. These contentions are unpreserved for appellate review, as the defendant made only a general objection, failed to request curative instructions, and did not timely move for a mistrial on these grounds (*see* CPL 470.05 [2]; *People v Balls*, 69 NY2d 641, 642 [1986]; *People v Salnave*, 41 AD3d 872, 874 [2007]). In any event, most of the challenged remarks were either fair comment on the evidence (*see People v Ashwal*, 39 NY2d 105 [1976]) or responsive to arguments and theories presented in the defense summation (*see People v Galloway*, 54 NY2d 396 [1981]). To the extent that any of the challenged remarks were improper, any error in allowing them was harmless in light of the overwhelming evidence of the defendant's guilt and since there was no significant probability that the error might have contributed to the defendant's convictions (*see People v Crimmins*, 36 NY2d 230, 241-242 [1975]; *People v Hill*, 286 AD2d 777, 778 [2001]). Skelos, J.P., Leventhal and Maltese, JJ., concur.

Hinds-Radix, J., dissents and votes to modify the judgment, on the law, vacate the conviction of criminal possession of a weapon in the second degree and the sentence imposed thereon, grant that branch of the defendant's omnibus motion which was to suppress physical evidence, and dismiss the count of the indictment charging the defendant with criminal possession of a weapon in the second degree, with the following memorandum: According to the testimony adduced at the pretrial hearing regarding that branch of the defendant's omnibus motion

which was to suppress physical evidence, on June 30, 2008, at around 11 p.m., Police Officer Jonas Schwizer, in uniform, was assigned to "cover patrol," driving a police sergeant, also in uniform, around a particular precinct. At around 11:15 p.m., he responded to a radio transmission about "a man with a firearm," described as a black male wearing a white T-shirt and black pants in the vicinity of Hancock and Tompkins Avenues in Brooklyn. He claimed that, when he arrived at that location, he saw four men, three of whom met that general description. However, he acknowledged on cross-examination that he did not look at their pants.

Schwizer testified that, as soon as he stopped his marked radio patrol car, the men "started walking in the opposite direction." The police exited the vehicle, approached the men, and asked "to see their hands." Two of the men who were wearing white T-shirts and the man not wearing a white T-shirt put their hands up, with their palms facing Schwizer. The defendant, who was wearing a white T-shirt, turned away with his hands at his waist.

Schwizer testified that, from a distance of four to five feet, he was unable to see the defendant's hands. However, the prosecutor asked him: "at the time you went to get the defendant's hands, were you able to see his hands?" He replied "Yes," and he further acknowledged that he did not see a gun in the defendant's hands.

Schwizer testified that he grabbed the defendant from behind, and felt the area of the defendant's body around his waist from back to front. As he performed this maneuver, he was unable to see the defendant's hands. At the front of the defendant's body, Schwizer felt a hard object, which he ascertained was the handle of a firearm. The defendant moved to his left, with Schwizer's hand caught in his T-shirt, causing the firearm to fall to the ground.

According to Schwizer, the defendant started to run, but after fleeing one third of a block, he complied with Schwizer's order to stop, and then he lay on the ground. The defendant was placed under arrest.

The Supreme Court denied that branch of the defendant's omnibus motion which was to suppress physical evidence, concluding that an "anonymous tip" provided the police with a sufficient basis to request information and authorized them to exercise the common-law right to inquire. The Supreme Court further concluded that the defendant's conduct in failing to comply with the directive to put his hands up, keeping his hands at waist level, and turning away from the officer, consti-

tuted furtive conduct giving rise to a reasonable suspicion of criminal activity sufficient to seize the defendant, citing *People v Alston* (23 AD3d 487 [2005]).

In *People v Alston*, the police actually heard gunshots and, responding to the scene, noted that the defendant and his companion were the only people on the street. The defendant in *Alston* failed to respond to questions, and placed his hand on his waistband while engaging in a shoving motion. In the instant case, on the other hand, the police were acting pursuant an anonymous tip, no questions were asked, and the defendant's hands were visible to the police officer, who saw he had nothing in them.

As noted by the majority, "on a motion to suppress physical evidence, the People bear the burden of going forward to establish the legality of police conduct in the first instance" (*see People v Berrios*, 28 NY2d 361, 367-368 [1971]; *People v Nichols*, 117 AD3d 881 [2014]). The People failed to meet that burden.

In *People v De Bour* (40 NY2d 210 [1976]), the Court of Appeals established a graduated four-level test for evaluating the propriety of police encounters when a police officer is acting in a law enforcement capacity (*see People v Moore*, 6 NY3d 496, 498-499 [2006]; *People v Hollman*, 79 NY2d 181, 184-185 [1992]). The first level permits a police officer to request information from an individual, and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality (*see People v Moore*, 6 NY3d at 498; *People v De Bour*, 40 NY2d at 223). The second level, known as the common-law right of inquiry, requires a founded suspicion that criminal activity is afoot, and permits a somewhat greater intrusion short of a forcible seizure (*see People v Moore*, 6 NY3d at 498-499). The third level permits a police officer to forcibly stop and detain an individual, based upon a reasonable suspicion that the individual is committing, has committed, or is about to commit a crime (*see id.* at 499; *People v De Bour*, 40 NY2d at 223). The fourth level authorizes an arrest based on probable cause to believe that a person has committed a crime (*see People v De Bour*, 40 NY2d at 223; *see also People v Moore*, 6 NY3d at 499).

The general rule is that an anonymous tip justifies exercise of the common-law right of inquiry (*see People v Moore*, 6 NY3d at 498; *People v Stewart*, 41 NY2d 65, 69 [1976]; *Florida v J.L.*, 529 US 266, 269-272 [2000]). The People claim that the police "had the common-law right to inquire because defendant matched the description of the man with the gun"—a description which was general and matched several people in the same

location. However, since Schwizer did not look at the men's pants, it cannot be said that he ascertained that they matched the general description before exercising the common-law right to inquire.

Further, the common-law right to inquire does not authorize an " 'intrusive step' " amounting to a seizure (*Matter of Shakir J.*, 119 AD3d 792, 795 [2014]; *see People v Johnson*, 54 NY2d 958, 959 [1981]; *People v Fernandez*, 87 AD3d 474, 475 [2011]; *People v Heapps*, 13 AD3d 107 [2004]). In the instant case, the police asked no questions, and immediately directed the defendant and his companions to put up their hands. When the defendant failed to comply with this specific directive, he was forcibly stopped and frisked.

The majority acknowledges that Schwizer was only furnished with reasonable suspicion justifying a forcible stop after he grabbed the defendant and felt the firearm in the defendant's waist area. Thus, the majority is sanctioning a fifth level of police intrusion, somewhere between the common-law right of inquiry and the forcible stop, not justified by the *De Bour* analysis. The intrusion was not minimal (*cf. People v Wyatt*, 14 AD3d 441, 442 [2005]), but, rather, constituted a detention which required a reasonable suspicion that the defendant was committing, had committed, or was about to commit a crime (*see People v De Bour*, 40 NY2d at 223; *see also People v Moore*, 6 NY3d at 499; *Matter of Shakir J.*, 119 AD3d at 795). However, the police did not acquire a reasonable suspicion until they unlawfully frisked the defendant. The later discovery of the gun "cannot validate an encounter that was not justified at its inception" (*People v Moore*, 6 NY3d at 498).

Since the People failed to satisfy their burden of going forward to establish the legality of the police conduct in the first instance (*see People v Whitehurst*, 25 NY2d 389, 391 [1969]), that branch of the defendant's omnibus motion which was to suppress physical evidence should be granted, and the count of the indictment charging the defendant with criminal possession of a weapon in the second degree should be dismissed.