■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEFFREY BUTLER, Appellant. [10 NYS3d 1]—

Judgment, Supreme Court, New York County (Cassandra M. Mullen, J., at suppression hearing; Ruth Pickholz, J., at plea and sentencing), rendered October 23, 2012, convicting defendant of criminal possession of a controlled substance in the third degree, and sentencing him, as a second felony drug offender, to a term of two years, unanimously reversed, on the law and the facts, and the indictment dismissed.

Defendant was the passenger in a vehicle stopped by the police at approximately 9:00 p.m. in a "high narcotics area." As an officer approached the passenger side of the vehicle, he noticed defendant's "head turning both ways and a lot of . . . movement coming from the area of the front passenger seat." As he reached the passenger side window, he saw defendant, who appeared nervous, "pulling his hand from his jacket, from the fold of his jacket." When the officer asked defendant what he "put in [his] jacket," defendant "mumbled something unintelligible or really didn't say much." The officer then reached into the car, "tapped" the pocket of defendant's jacket with the flashlight he was holding, and felt "something hard." Next, the officer ordered defendant out of the car and frisked him, feeling in his pocket a "cylinder type thing" and what felt like a large quantity of loose pills. He also felt what he believed was a large quantity of money. In response to the officer's question, defendant stated that he had medication, and that "some" of it belonged to him. The officer removed a black plastic bag from defendant's pocket and handcuffed him. Upon opening the bag, the officer found that it contained a large number of loose pills in several small sandwich bags, as well as pills in two bottles.

The officer's observations, up until the time he arrived at the passenger window, gave rise to founded suspicion that criminal-

ity was afoot, and so justified his question regarding what defendant had put in his pocket, which constituted a common-law inquiry (*see People v Hollman*, 79 NY2d 181, 184-185 [1992]). However, we find that the physical intrusion of tapping defendant's pocket was unauthorized. The circumstances did not give rise to the reasonable suspicion required to authorize a frisk. Nor was the officer's conduct justifiable as a "minimal self-protective measure" (*People v Davis*, 106 AD3d 144, 151 [1st Dept 2013], *lv denied* 21 NY3d 1073 [2013]), which is permissible in furtherance of the common-law right of inquiry, where sufficient concerns for personal safety are present (*see e.g. People v Chin*, 192 AD2d 413 [1st Dept 1993], *lv denied* 81 NY2d 1071 [1993]). The circumstances, viewed as a whole, did not suggest any need for the officer to take such a precaution. At the time of the officer's intrusion, defendant was not reaching for an area where a weapon might be located, there was no suggestion that a weapon was present or that violence was imminent, and there was no other basis for a self-protective intrusion.

Because the ensuing frisk outside the car, and the resulting arrest, depended on the initial improper intrusion, they were invalid as well. In any event, we also find that the search of the plastic bag following defendant's arrest was not supported by exigent circumstances (*see People v Jimenez*, 22 NY3d 717 [2014]). Concur—Gonzalez, P.J., Mazzarelli, Renwick and Gische, JJ.