People v Muhammed (2021 NY Slip Op 04446)





People v Muhammed


2021 NY Slip Op 04446


Decided on July 16, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 16, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., PERADOTTO, NEMOYER, CURRAN, AND DEJOSEPH, JJ.


435 KA 18-00688

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
SALEEM K. MUHAMMED, DEFENDANT-APPELLANT. 






TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (BRITTNEY N. CLARK OF COUNSEL), FOR DEFENDANT-APPELLANT.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (KAYLAN PORTER OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Monroe County (Charles A. Schiano, Jr., J.), rendered December 12, 2017. The judgment convicted defendant, upon a plea of guilty, of criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him, upon his plea of guilty, of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]). On appeal, defendant argues that Supreme Court erred in refusing to suppress a gun recovered from his coat pocket during the initial 40 seconds of a traffic stop. We affirm.
At the outset, defendant correctly concedes that the initial traffic stop was lawful based on the driver's traffic infractions and suspended license (see People v Robinson, 97 NY2d 341, 350 [2001]; People v Jarrett, 157 AD3d 534, 534 [1st Dept 2018], lv denied 31 NY3d 1014 [2018]). Defendant also correctly concedes that the police properly directed him to exit the vehicle (see People v Garcia, 20 NY3d 317, 321 [2012]). Defendant further correctly concedes that, at the inception of the traffic stop, a recent tip from his parole officer supplied the police with founded suspicion that he was in possession of a gun; defendant therefore acknowledges that the police were authorized to conduct a level two common-law inquiry at the inception of the traffic stop.
Defendant asserts, however, that the gun was not actually discovered until the police had already effectuated a level three detention of his person by grabbing his arms after he exited the vehicle. That purported level three detention was impermissible, according to defendant, because the police lacked any reasonable suspicion of criminality at its inception. Thus, defendant reasons, the court erred in refusing to suppress the gun discovered during the ostensibly impermissible level three detention. We reject defendant's contention for the following reasons.
First, defendant was not subject to a level three detention at any point before the police saw the gun. It is well established that "minimal self-protective measure[s are] permissible in furtherance of the common-law right of inquiry, where sufficient concerns for [officer] safety are present" (People v Butler, 127 AD3d 623, 624 [1st Dept 2015] [internal quotation marks omitted]; see People v Chin, 192 AD2d 413, 413 [1st Dept 1993], lv denied 81 NY2d 1071 [1993]). As such, a level one or two encounter is not transformed into a level three detention whenever law enforcement briefly grabs the defendant in response to a sudden movement that made it "objectively reasonable, under all the circumstances, for the officer to be concerned that [the] defendant might be reaching for a weapon" (People v Davis, 106 AD3d 144, 151 [1st Dept 2013], lv denied 21 NY3d 1073 [2013]; see People v Wyatt, 14 AD3d 441, 441-442 [1st Dept 2005], lv denied 4 NY3d 837 [2005]; People v Campbell, 293 AD2d 396, 396-397 [1st Dept 2002], lv denied 98 NY2d 695 [2002]; Chin, 192 AD2d at 413). Put simply, grabbing a suspect's arm after he or she reaches furtively or suspiciously for his or her pocket during a level two [*2]encounter is a "justified" and "minimal self-protective measure" (Davis, 106 AD3d at 151); such a protective action is "not a frisk" subject to level three scrutiny (Wyatt, 14 AD3d at 441-442 [internal quotation marks omitted]). Here, the parole officer's tip that defendant had a gun, combined with defendant's continuous clutching at his right side and evasive efforts to shield whatever he was clutching as he exited the vehicle, made it "objectively reasonable, under all the circumstances, for the officer[s] to be concerned that defendant might be reaching for a weapon" (Davis, 106 AD3d at 151). Thus, the officers' momentary actions in grabbing and attempting to secure defendant's arms to ensure that he did not draw a gun were a proper "minimal self-protective measure" that did not transform the indisputably permissible level two inquiry into a level three detention requiring reasonable suspicion (id.; see Wyatt, 14 AD3d at 441-442; Campbell, 293 AD2d at 396-397; Chin, 192 AD2d at 413).
Second, even had the police effectuated a level three detention simply by grabbing defendant's arms, any such level three detention would have been justified by the requisite reasonable suspicion of criminality. Specifically, given the combined effect of the parole officer's tip, defendant's continuous and unnatural clutching at his right side, defendant's evasive efforts to extricate himself from the scene by forcefully walking backwards upon exiting the vehicle, and defendant's status as a parolee, we conclude that the police had reasonable suspicion that defendant was armed at the moment they grabbed his arms (see e.g. People v Argyris, 24 NY3d 1138, 1140-1141 [2014], rearg denied 24 NY3d 1211 [2015], cert denied 577 US 1069 [2016]; People v White, 113 AD3d 532, 533 [1st Dept 2014], lv denied 24 NY3d 1048 [2014]; People v Nelson, 67 AD3d 486, 487 [1st Dept 2009]; see generally People v Huntley, 43 NY2d 175, 181 [1977]). Defendant's contrary arguments improperly analyze each aspect of the encounter in isolation and without considering the totality of the circumstances confronting the officers during this fast-moving and compacted encounter (see People v Stephens, 47 AD3d 586, 588-589 [1st Dept 2008], lv denied 10 NY3d 940 [2008]).
The court thus properly refused to suppress the gun because the police did nothing improper to facilitate or cause its discovery.
Entered: July 16, 2021
Mark W. Bennett
Clerk of the Court