People v Baker (2022 NY Slip Op 03122)

People v Baker

2022 NY Slip Op 03122

Decided on May 11, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 11, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
JOSEPH J. MALTESE
PAUL WOOTEN
JOSEPH A. ZAYAS, JJ.

2019-14605
 (Ind. No. 486/17)

[*1]The People of the State of New York, respondent,
v
Shawn Baker, appellant.

Joseph Z. Amsel, New York, NY, for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, William H. Branigan, and Matthew C. Harnisch of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (John F. Zoll, J.), rendered December 11, 2019, convicting him of criminal possession of a weapon in the second degree (three counts) and unlawful possession of pistol ammunition, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Robert Charles Kohm, J.), of that branch of the defendant's omnibus motion which was to suppress physical evidence, and the denial (Peter F. Vallone, Jr., J.), without a hearing, of the defendant's separate motion to controvert a search warrant and suppress physical evidence seized in the execution thereof.
ORDERED that the judgment is affirmed.
Pursuant to People v De Bour (40 NY2d 210), there is "a graduated four-level test for evaluating the propriety of police encounters when a police officer is acting in a law enforcement capacity" (People v Benbow, 193 AD3d 869, 871 [internal quotation marks omitted]). "The first level permits a police officer to request information from an individual, and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality" (id. at 871 [internal quotation marks omitted]). "The second level, known as the common-law right of inquiry, requires a founded suspicion that criminal activity is afoot, and permits a somewhat greater intrusion" (id. [internal quotation marks omitted]). "Based upon a founded suspicion that criminal activity is afoot, the subject may be asked to produce identification, may be asked whether he [or she] has weapons, and may be asked to remove his [or her] hands from his [or her] pockets" (Matter of Shakir J., 119 AD3d 792, 794-795 [citation omitted]; see People v Muhammed, 196 AD3d 1151, 1152-1153; Matter of Shariff H., 123 AD3d 714, 717; People v Hill, 72 AD3d 702, 704-705). "The third level permits a police officer to forcibly stop and detain an individual" (People v Benbow, 193 AD3d at 871 [internal quotation marks omitted]). "Such a detention, however, is not permitted unless there is a reasonable suspicion that an individual is committing, has committed, or is about to commit a crime" (id. [internal quotation marks omitted]). "A corollary of the statutory right to temporarily detain for questioning is the authority to frisk if the officer reasonably suspects that he [or she] is in danger of physical injury by virtue of the detainee being armed" (People v De Bour, 40 NY2d at 223). "The fourth level authorizes an arrest based on probable cause to believe that a person has committed a crime" (People v Benbow, 193 AD3d at 871 [internal quotation marks omitted]).
Here, the Supreme Court correctly denied that branch of the defendant's omnibus motion which was to suppress physical evidence. Contrary to the defendant's contention, under the circumstances, the officer who stopped him had "a founded suspicion that criminal activity [was] afoot," supporting a level-two inquiry at the outset of the encounter (id. [internal quotation marks omitted]; see People v King, 164 AD3d 915, 915; People v Abdul-Mateen, 126 AD3d 986, 987-988). As part of this level-two inquiry, the officer was permitted to ask the defendant to take his hands out of his pockets (see People v Abdul-Mateen, 126 AD3d at 988; Matter of Shariff H., 123 AD3d at 717; Matter of Shakir J., 119 AD3d at 794-795; People v Hill, 72 AD3d at 704-705). The defendant's failure to comply with this request, combined with him "shoulder[ing] through" the officer, escalated the encounter such that the officer was justified in grabbing the defendant's pocket, where the defendant's hand remained, for self-protection (see People v Muhammed, 196 AD3d at 1152-1153; People v King, 164 AD3d at 916; People v Abdul-Mateen, 126 AD3d at 988). At that point, the officer felt the handle of a firearm in the defendant's pocket, which provided him with reasonable suspicion for a level-three stop (see People v Abdul-Mateen, 126 AD3d at 988). Given that the defendant had already used physical force against the officer and the officer felt a gun in the defendant's pocket, the officer was entitled to frisk the defendant (see People v De Bour, 40 NY2d at 223; People v Abdul-Mateen, 126 AD3d at 988). Accordingly, the evidence at the suppression hearing showed that the encounter began as a proper level-two inquiry, that the defendant escalated the encounter into a level-three stop, and that the officer recovered the gun as part of a justifiable frisk of the defendant during the level-three stop.
Contrary to the defendant's contention, the Supreme Court did not err in denying his motion to controvert a search warrant and suppress physical evidence seized in the execution thereof. The defendant failed in both his initial motion papers and in his motion to renew to "make the requisite substantial preliminary showing that the warrant[ ] [was] based upon affidavits containing statements that were knowingly or intentionally false or made with reckless disregard for the truth" (People v Watson, 163 AD3d 855, 857; see Franks v Delaware, 438 US 154, 155-156, 171; People v Lassiter, 151 AD3d 885, 886; People v Moshier, 110 AD3d 832, 833). The defendant's contention that certain trial evidence called into question the truthfulness of the affidavit submitted in support of the application for the search warrant is unpreserved for appellate review (see CPL 470.05[2]; People v Lassiter, 151 AD3d at 886) and, in any event, without merit. The defendant's contention regarding CPL 710.60(2)(a) is not properly before this Court, as the defendant raises it for the first time in his reply brief (see People v Shaw, 126 AD3d 1016, 1017).
In fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342, 348), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410; People v Bleakley, 69 NY2d 490, 495). Upon our review of the record here, we are satisfied that the verdict of guilt on the count of criminal possession of a weapon in the second degree with respect to a .40 caliber pistol was not against the weight of the evidence. Contrary to the defendant's contention, the weight of the credible evidence supported a finding that he constructively possessed this firearm, as it was found in the back of the vehicle that he stated "was his" and to which he possessed the keys when he was arrested, and the People presented video evidence of the defendant in the back of the vehicle on the day of his arrest (see People v Danielson, 9 NY3d at 348; People v Amos, 198 AD3d 797, 800; People v Branch, 186 AD3d 1705, 1706; People v Williams, 170 AD3d 1046, 1048). That there was evidence that the codefendants also had access to or possessed this firearm was of no moment, as "possession, even if joint, is still possession" (People v Williams, 170 AD3d at 1048 [internal quotation marks omitted]). The defendant's contention regarding his acquittal of a separate count involving the same firearm is without merit, as that count included as an element that "the defendant had the intent to use [the firearm] unlawfully against another." The evidence supported a finding that the defendant constructively possessed the firearm but did not have an intent to use it unlawfully against another.
"Upon motion of the defendant," "the court must declare a mistrial . . . when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives him [or her] of a fair trial" (CPL 280.10[1]). "The decision to declare a mistrial rests within the sound discretion of the trial court, [*2]which is in the best position to determine if this drastic remedy is truly necessary to protect the defendant's right to a fair trial" (People v Diaz, 189 AD3d 1063, 1066). Here, the Supreme Court did not improvidently exercise its discretion in denying the defendant's motion for a mistrial, as the court struck the improper testimony and issued a prompt curative instruction to the jury regarding the testimony (see id. at 1066; People v Ellis, 166 AD3d 993, 997, affd 32 NY3d 1092; People v Keizer, 157 AD3d 903, 904-905). Additionally, the court accepted the prosecutor's representation that he had not intentionally elicited the improper testimony, and there is no basis in the record to disturb this finding (see People v Diaz, 189 AD3d at 1066; People v Tullock, 148 AD3d 1061, 1061-1062; People v Bryant, 280 AD2d 403, 403). Finally, the defendant waived his argument that the curative instruction compounded any prejudice to him by emphasizing the improper testimony, as he agreed that the court should give a curative instruction and specifically asked that the court use "the strongest language and tone that [the court] can come up with" (see People v Armstrong, 138 AD3d 877, 879).
BARROS, J.P., MALTESE, WOOTEN and ZAYAS, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court