■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v YIU C. CHOY, Appellant.—Appeal by the defendant from two judgments of the Supreme Court, Queens County (Pitaro, J.), both rendered January 11, 1990, convicting him of robbery in the first degree under Indictment No. 6059/88, and robbery in the first degree under Indictment No. 6608/59, upon his pleas of guilty, and imposing sentences. The appeal under Indictment No. 6059/88, brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress the defendant's statements to law enforcement officials and identification testimony.

Ordered that the judgments are reversed, on the law, the pleas are vacated, those branches of the defendant's omnibus motion which were to suppress the defendant's statements to law enforcement officials and identification testimony are granted, and the matter is remitted to the Supreme Court, Queens County, for further proceedings.

On November 9, 1988, at about 1:50 A.M., Police Officers Lucas and Hogan responded, as a result of a radio transmission, to 74th Street between 44th and 45th Avenues, in Queens. There they were informed by the complainant that "four young male Orientals, dressed in dark clothing, beat him and robbed him" at gunpoint. The officers subsequently canvassed the area, apparently without success. Two hours later, at approximately 3:55 A.M. the officers went to a delicatessen located at the intersection between 74th Street and Broadway to get a sandwich when they observed four male Oriental youths dressed in dark clothing. Two of them, the defendant Yiu C. Choy and his codefendant, Henry Chong, were standing outside the delicatessen talking together with numerous other people. The officers also noticed that the other people there wore lighter clothing. The delicatessen was three-tenths of a mile away from the scene of the robbery. As the officers approached in the patrol car, the flashing lights turned on, the four youths separated, with two walking down 74th Street and the other two going across Broadway. Officer Lucas and his partner got out of the car, telling them "[s]top we want to talk" but they "kept going." The officers then followed the defendant and the codefendant, who were walking down 74th Street, and stopped them. As a result of the frisk, a gun, and credit cards belonging to the complainant, were discovered on the codefendant's person.

Recently, in *People v Dawkins* (163 AD2d 322), this court observed that "[i]t has consistently been held that general descriptions are not sufficient to constitute reasonable suspi-

cion" *(People v Dawkins, supra,* at 324; *see, People v Stewart,* 41 NY2d 65, 69; *People v Perez,* 125 AD2d 419, 420; *People v Skrine,* 125 AD2d 507, 508; *People v White,* 117 AD2d 127, 131). There was no reasonable suspicion to stop the defendant. We note that nowhere in the hearing record does Officer Lucas testify that he made any minimally intrusive inquiries of the defendant. The officer's sole reaction to discovering two young male Orientals, dressed in dark clothing, three-tenths of a mile away from the scene and two hours after the crime, was to follow, stop, and frisk them when they refused his entreaties "to talk". The gun and credit cards were only discovered on the codefendant's person subsequent to the stop. Thus, the defendant's statement and identification, which were the fruit of the illegal stop and subsequent arrest, should have been suppressed.

The defendant pleaded guilty to two indictments. In light of the decision of the Court of Appeals in *People v Clark* (45 NY2d 432, 440), the defendant's plea to both indictments should be vacated since the pleas were conditioned on the defendant receiving concurrent sentences on the indictments.

In light of the foregoing we decline to reach the defendant's remaining contentions. Thompson, J. P., Brown, Balletta, Miller and O'Brien, JJ., concur.