Judgment, Supreme Court, New York County (Ronald Zweibel, J.), rendered September 16, 2010, convicting defendant, after a jury trial, of two counts of criminal possession of a weapon in the second degree, and sentencing him to concurrent terms of 12 years, unanimously affirmed.
*674 The hearing court properly concluded that the police had reasonable suspicion to stop defendant based on the similarity between his appearance and a wanted poster that was in the patrol car, and then properly frisked defendant for a weapon because he was a suspect in a series of armed robberies. Here, Officer Perez, who testified at the suppression hearing, explained that in the early morning hours of July 17, 2009, he was on anti-crime patrol in an unmarked car with a sergeant and another officer. Officer Perez had been in the Anti-Crime Unit for several years and had made numerous gun-related arrests. He was involved in an investigation of pattern robberies that had occurred within Manhattan North. Perez testified that he had in his patrol car a wanted poster that contained a photograph of an individual involved in a robbery pattern that was identified as number 69. Those robberies occurred from July 10, 2009 through July 15, 2009 in the 30th and 32nd precincts. The poster, which was introduced in evidence at the suppression hearing, contained a description in addition to an actual photograph of the suspect. The description was of a male, black, 40 to 50 years old, 5’7” to 5’9” tall, slender build, unshaven beard, and wearing a white cap and white shirt. The suspect is pictured holding a gun and the description of the robberies notes that the suspect brandished a firearm during the crimes.
Perez further explained that at some time prior to his patrol that morning, he also had seen an artist’s sketch contained in another wanted poster relating to a gunpoint robbery in the 24th precinct on July 3, 2009 in the early morning hours. The suspect in that crime was described as a male black, late 40s or early 50s, wearing a dirty white baseball cap and an off-white t-shirt with gray tip sleeves.
Perez saw defendant walking northbound on Lenox Avenue, around West 137 Street, at about 1:25 a.m. Defendant appeared to match the description of the suspect in pattern robbery 69. Defendant also matched the age group and general clothing description of the suspect in the artist’s sketch arising out of the 24th precinct crime.
When Perez first saw defendant, he was a few feet away from him. Nothing was obstructing his view and Lenox Avenue was well lit. Perez, who was in the rear passenger seat, had the driver of the police car pull the vehicle up close to defendant and was able to “get a good look at him.” Perez, the sergeant and the other officer got out of their vehicle, without their guns out, identified themselves as police officers and positioned themselves around defendant. Perez frisked defendant in his waistband area and, when he felt a firearm, he pulled the *675 weapon out of the waistband. Defendant was then arrested. Perez explained that he frisked defendant because the wanted posted was for a violent crime and the frisk was for the officers’ safety.
The People correctly argue that the similarity between defendant’s appearance and that of the suspect in the wanted poster provide reasonable suspicion for the stop (see People v Medina, 66 AD3d 555 [1st Dept 2009] [officer was carrying surveillance photographs and the defendant matched description provided by crime victims], lv denied 13 NY3d 908 [2009]; People v Joseph, 10 AD3d 580 [1st Dept 2004] [passenger’s resemblance to suspect in a wanted poster furnished reasonable suspicion to stop the vehicle], lv denied 3 NY3d 740 [2004]). Moreover, the stop only was two days after the last of the pattern robberies in the wanted poster and defendant’s clothing was similar to that of the suspect in both the poster and the sketch. Also, as Perez noted, the stop was in the early morning hours in Northern Manhattan, which was consistent with the information the police had on the pattern crimes. The wanted poster photograph also shows someone with a beard, and Perez specifically noted defendant had a beard. These factors all support a finding of reasonable suspicion (see People v Johnson, 22 AD3d 371 [1st Dept 2005], lv denied 6 NY3d 754 [2005]).
On appeal, defendant does not offer any reason to disturb the court’s credibility findings, in which the court accepted Perez’s version of the events.* Rather, defendant focuses on the differences between the wanted poster and the artist’s sketch. No question exists that the artist’s sketch poster describes the suspect as having a scar on the left jaw and reddish hair, and these details are not mentioned in the wanted poster. These differences are of no consequence, however, because the wanted poster, which is what the police had in the car, has an actual photograph of the suspect. Similarly, the fact that the wanted poster describes the suspect as 5’7” to 5’9” and the artist’s sketch poster says the suspect is approximately 6’0” is hardly a major inconsistency and also is insignificant because Perez admitted he did not know defendant’s specific height when he observed him. Perez explained that defendant’s actual height fell more in the 5’7” to 5’9” range, which would be consistent with the wanted poster in the car.
Defendant also mischaracterizes the evidence here by suggesting that Perez’s testimony would support the stop of any male black in the general age group with a beard wearing simi *676 lar clothing. Although Perez acknowledges that his attention was drawn to defendant because of these factors, his testimony-shows that the vehicle pulled up close to defendant and Perez got a good look at defendant on a well-lit street. The cases relied on by defendant (see e.g. People v Dubinsky, 289 AD2d 415 [2d Dept 2001]; People v Yiu C. Choy, 173 AD2d 883 [2d Dept 1991]), do not involve situations where the police actually had a photograph of the suspect in the car prior to the stop. Furthermore, the description in Choy was far less specific than the one here and did not contain any age information nor detail such as a beard. In addition, Perez explained at the hearing that defendant’s height was the same as the suspect in the wanted poster and that he was wearing a baseball cap and shirt that matched both posters.
Finally, there is no question that given the violent nature of the crimes involved here, the officers, who had reasonable suspicion for the stop, had a right to frisk defendant for their safety (see People v Moore, 32 NY2d 67, 71 [1973], cert denied 414 US 1011 [1973]; Medina, 66 AD3d at 556). Moreover, we note that the officers acted reasonably in identifying themselves as police and not having their weapons drawn as they approached.
The court did not err in declining to appoint new counsel for defendant on the day the suppression hearing commenced. This was defendant’s second attorney, and counsel advised the court that he was ready to proceed with the hearing. Moreover, the hearing court offered counsel additional time to speak with defendant, but defendant refused to meet with the attorney. The court was not obligated to remove counsel mid-trial when defendant again objected to his lawyer merely because defendant disagreed with the attorney’s handling of an evidentiary issue. Nothing in the record shows that counsel was ineffective, and conflicts over trial strategy are not a basis for removing an attorney (see People v Smith, 18 NY3d 588, 593 [2012]). Moreover, based on the record, counsel had a legitimate reason for not wanting the wanted poster to be shown to the jury since counsel noted that the man portrayed on the poster significantly resembled defendant. Any problems in communication during these proceedings were caused, in large part, by defendant, and the court already had changed counsel once in this case.
The Sandoval ruling which permitted inquiry into some of defendant’s convictions, but not others, was a proper exercise of the court’s discretion. Here, the court further limited the potential prejudice by precluding the prosecution from inquiry into the underlying facts of the crimes (see People v John, 89 AD3d 552, 553 [1st Dept 2011], lv denied 18 NY3d 927 [2012]).
*677 Defendant’s sentence, which was less than the maximum, was not excessive in light of his significant record. The fact that he is in his late 50s provides no reason for reduction of the sentence. Concur—Andrias, J.E, Acosta, Freedman, Richter and Gische, JJ.

 Defendant had testified at the hearing that the police never announced that they were officers and had their weapons drawn.