People v Heyward (2023 NY Slip Op 01651)

People v Heyward

2023 NY Slip Op 01651

Decided on March 28, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 28, 2023

Before: Kern, J.P., Oing, Kennedy, Pitt-Burke, Higgitt, JJ. 

Ind. No. 4714/09 Appeal No. 17578 Case No. 2012-01418 

[*1]The People of the State of New York, Respondent,
v
Vincent Heyward, Defendant-Appellant.

Robert S. Dean, Center for Appellate Litigation, New York (John Vang of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (R. Jeannie Campbell-Urban of counsel), for respondent.

Judgment, Supreme Court, New York County (Ronald A. Zweibel, J.), rendered December 12, 2011, as amended December 15, 2011, convicting defendant, after a jury trial, of predatory sexual assault (14 counts), robbery in the first degree (3 counts), burglary in the first degree (two counts), rape in the first degree, criminal sexual act in the first degree, burglary in the second degree (4 counts), robbery in the second degree (two counts), attempted rape in the first degree and sexual abuse in the first degree (4 counts), and sentencing him to an aggregate term of 428 years to life, unanimously modified, on the law, to the extent of vacating the convictions of rape in the first degree and criminal sexual act in the first degree under renumbered counts 20 and 21 and dismissing those counts, and otherwise affirmed.
The counts of the indictment charging predatory sexual assault, which essentially track the language of the statute, are not jurisdictionally defective (see CPL 200.50[7]; Penal Law § 130.95[2]; People v Iannone, 45 NY2d 589, 600 [1978]). While each count does not specifically name a second victim, they each charge an aggravating act against one or more "additional persons" (see People v Mackey, 49 NY2d 274, 278 [1980]). Given the plain meaning of the word "additional," these counts cannot be read as referring to a single victim twice, and we reject defendant's argument to the contrary.
The court properly denied defendant's motion to suppress DNA information obtained after he provided a swab during a street encounter with the police. The record supports a finding that defendant's resemblance to the person depicted in a poster of a suspect wanted in connection with a series of sexual assaults in the neighborhood provided the police with at least a common-law right of inquiry, if not reasonable suspicion (see People v Reed, 106 AD3d 673, 675 [1st Dept 2013], lv denied 21 NY3d 1045 [2013]). Contrary to defendant's argument, there was sufficient evidence adduced at the hearing to show the connection between the man in the wanted poster and one or more of the sex crimes, at least to establish the founded suspicion required for a level- two inquiry (see People v Hill, 72 AD3d 702, 704 [2d Dept 2010], lv denied 15 NY3d 751 [2010]). The hearing evidence also established that the encounter never exceeded the bounds of such an inquiry, during which the police lawfully asked defendant if he would consent to provide a DNA sample. Based on the applicable factors, the court also properly concluded that the People met their burden of establishing that defendant knowingly and voluntarily consented to providing such a sample (see People v Gonzalez, 39 NY2d 122, 128-31 [1976]). Among other things, defendant signed a consent form that expressly advised him of his right to refuse consent, and the record fails to support his assertion that the police threatened to arrest him. In any event, we find that the record supports the court's alternative holding that [*2]the inevitable discovery doctrine applied, because there was a high degree of probability that the police would have eventually obtained a copy of defendant's DNA profile as the result of DNA he had provided in connection with an unrelated case, and matched it to the samples taken from the rape victims (see People v Turriago, 90 NY2d 77, 85-86 [1997]; People v Fitzpatrick, 32 NY2d 499, 505-506 [1973]; People v Adams, 120 AD3d 1253, 1255 [2d Dept 2014], lv denied 24 NY3d 1081 [2014]).
The court also properly denied defendant's motion to suppress statements he made to the police during the same street encounter where he provided the DNA sample. As noted, the police were conducting a level-two inquiry during which they posed general questions to defendant and his friend as part of their initial investigation, and they allowed defendant to leave following their brief interaction on a public sidewalk. In any event, regardless of whether defendant was detained, there was no custodial interrogation requiring Miranda warnings (see e.g. People v Richardson, 193 AD3d 430, 431 [1st Dept 2021], lv denied 37 NY3d 967 [2021]).
The court, applying the version of CPL 240.20 then in effect, properly denied defendant's pretrial motion seeking production of certain unprocessed DNA raw data. The People established that the requested material was in the possession of the Office of the Chief Medical Examiner (OCME), which, for purposes of discovery matters, is an independent agency not controlled by the People or engaged in law enforcement activity (see People v Washington, 86 NY2d 189, 192 [1995]; People v Stern, 270 AD2d 118, 118-119 [1st Dept 2000], lv denied 95 NY2d 893 [2000]). In addition, the People's opposition established that, at least at the time of defendant's discovery motion in 2010, the requested materials did not exist in a disclosable form, and in order to comply with the request the prosecution or the OCME would have had to create or compile material for defendant (see generally Matter of Hoovler v De Rosa, 143 AD3d 897, 900 [2d Dept 2016]; People v Mohammed, 52 Misc 3d 242 [Sup Ct, Bronx County 2016]). Defendant's constitutional argument regarding discovery is unavailing.
The People were not required to call every analyst involved in the DNA testing in this case, and there was no violation of defendant's right of confrontation in this regard. A graphical DNA report is nontestimonial, while an expert's opinion about a match would be (People v Pealer, 20 NY3d 447, 454 [2013]; People v Rawlins, 10 NY3d 136, 157 [2008]). A defendant's right to confrontation is not violated simply because an expert DNA analyst refers to data gathered by nontestifying technicians (see People v Brown, 13 NY3d 332, 340 [2009]). Here, the supervising analyst testified about his review of the data and his independent conclusions based thereon. There was no Confrontation Clause violation because the expert analyst's testimony demonstrates his own "independent analysis" of the [*3]data to make a comparison, and the analysis was not merely "a conduit for the conclusions of others" (People v John, 27 NY3d 294, 315 [2016]).
The specified counts should be dismissed as inclusory concurrent counts of two of the predatory sexual assault counts.
Defendant's sentence was neither unconstitutional nor otherwise illegal. Although the Penal Law expressly provides for sentences of life without parole for certain crimes, there is no prohibition against sentences for other crimes, or authorized groups of consecutive sentences, that exceed a defendant's life expectancy. We perceive no basis for reducing the sentence as a matter of discretion.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 28, 2023